**Barak Lee BARNUM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–98–0185–CR.**

Court of Appeals of Texas,
Amarillo.

Nov. 30, 1999.

Rehearing Overruled Jan. 20, 2000.

Joe Marr Wilson, Amarillo, for appellant.

Potter County Dist. Atty., Rebecca King, John L. Owen, Amarillo, for appellee.

Before QUINN, REAVIS, and JOHNSON, JJ.

PHIL JOHNSON, Justice.

Appellant Barak Lee Barnum appeals his conviction for murder and his sentence of 40 years confinement and a fine of $10,000.00. Appellant asserts that (1) the conviction was based on legally and factually insufficient evidence; (2) a written statement of decedent was admitted in violation of the hearsay rule and his constitutional rights to confront witnesses against him; (3) the trial court should have given an appropriate limiting instruction in regard to the written statement of decedent; and (4) during jury argument on punishment the State impermissibly commented on appellant's failure to testify. We reverse and remand.

## I. FACTUAL BACKGROUND

Cathy Jean Barnum was last seen alive on December 6, 1994. Her body was discovered in a field near the Amarillo International Airport on April 5, 1995. Forensic reports indicated that she died by strangulation. Cathy's husband, appellant Barak Lee Barnum, was convicted for her murder.

During November of 1994, appellant was housed at the Panhandle Addiction Recovery Center (PARC). He returned home from PARC on December 6, 1994, the same day Cathy was last seen alive. While appellant was undergoing treatment at PARC, Cathy had begun dating a man by the name of Blane Jones. Cathy and Jones began a sexual relationship shortly after they began dating. While appellant was at PARC, he learned that Cathy and Jones were dating. Cathy told Jones that she was divorcing appellant. She at first told Jones that she was not going to allow appellant to stay in the home with their sons and her when appellant returned from PARC. Cathy apparently made the same statement to appellant. While he was still in PARC, appellant was talking on the telephone with his friend Gladys Blevins and told Gladys that he threatened to kill Cathy if she did not let him return home and see the children.

Just before appellant actually returned from PARC, Cathy told Jones that she was going to allow appellant to stay at home one night. On December 6th, the day appellant returned from PARC and the day of Cathy's disappearance, Cathy went to the office from which she ran her business. Jones went to Cathy's office that afternoon and she asked him to go with her to pick up one of her children from school. Jones left his pickup truck at Cathy's office. Jones decided that it might not be a good idea for him to be with Cathy and her son when she dropped the boy off at her home because it was the first day appellant was home from PARC. Cathy, therefore, dropped Jones off at his house before she picked up her son. Jones understood that she would return after she took her son home and would then take him to her office to pick up his truck. Jones testified that he never saw Cathy again.

The three Barnum boys testified that on the evening of December 6th they ate supper with appellant while their mother stayed in her bedroom. The boys and appellant stayed up late watching television, and the four of them slept in the living room with the television on. Their mother did not participate in their activities. The boys recalled seeing their mother in bed, seemingly asleep, with the bedcovers pulled up around her shoulders. One of the boys thought he recalled his mother leaving the house about 1:00 a.m., but he was not certain that his recollection was not a dream. Each child's trial testimony differed somewhat from statements previously given to police.

Michelle Norman was the Barnum's neighbor from across the street. On the morning of December 7th, appellant called Norman to ask if she had seen Cathy. Norman told appellant that she thought she had seen her at about 7:45 a.m. driving her car, however, she could not tell whether or not it actually was Cathy. The woman she had seen had blonde hair and drove

a white car. Norman testified that appellant told her that she was his "witness."

On Thursday evening, December 8th, Norman took appellant and his boys some stew. She witnessed appellant asking his sons questions about the night Cathy disappeared. Norman testified that appellant said he had to keep "drilling" his boys so that they would keep their stories straight.

On December 10th, Gary Grice gave appellant a ride from Dumas to Amarillo. Grice testified that appellant told him he had talked to Cathy on the phone since her disappearance and that she was staying at a house in Canyon, Texas.

Cecil Howard had been friends with appellant for a long time. He also knew Cathy. Howard saw a car similar to Cathy's parked near Elwood Park in Amarillo. Two or three weeks later he mentioned the car to appellant and the two men went to look at it. When they reached the car, appellant went immediately to the car and entered it, contrary to the advice of police. Appellant acknowledged to the police that he had entered the car to make sure it was Cathy's, but he denied that he or anyone other than Cathy had keys to her car. During a search of Howard's truck, however, the police found keys to Cathy's car under the passenger seat where appellant had been riding. Both Howard and appellant denied any knowledge of the presence of the keys.

An overnight bag, a change of clothes, and curlers were found in Cathy's car. Cathy's mother, Jackie Bolden, testified that the clothes were uncoordinated summer clothes which Cathy would not have packed, especially for a trip in December. The curlers did not have curler pins, and they would have been useless without the pins. Cathy wore contacts, but the contact case and solution were not packed in the bag. Neither Cathy's makeup nor her makeup mirror were in the bag.

Some time after Cathy was last seen alive, Bolden was invited by appellant to help move some of Cathy's personal effects. During the move, Bolden discovered an envelope containing a statement in Cathy's handwriting. In the statement Cathy wrote that she believed appellant "may be contemplating murdering me for my $100,000.00 life insurance policy." Accompanying the statement was an undated list of figures which Cathy wrote that she had found and which was in appellant's handwriting. The list included a notation of $5,000 for "funeral," but did not include any explanation of the purpose for which the list was made. Bolden testified that Cathy's insurance policy lapsed before Cathy's disappearance.

Appellant was eventually arrested and charged with Cathy's murder. He was in jail for a time before he was able to post bail. Two of appellant's three cellmates testified against him at trial. One testified that appellant stated he was worried that if police talked to his children, they would know that he had "done it." A second cellmate testified that after appellant's sons were questioned, appellant stated, "I think they know I did it." The third cellmate testified that he did not believe either of the other two inmate witnesses were truthful.

## II. Sufficiency of the Evidence

### A. Legal Sufficiency

Appellant first claims that the evidence in support of the verdict is legally insufficient. We disagree.

The standard for legal sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Carlsen v. State,* 654 S.W.2d 444, 448 (Tex.Crim. App.1983) *overruled on other grounds by Geesa v. State,* 820 S.W.2d 154, 161 (Tex. Crim.App.1991). Sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.

1997). All of the evidence is considered in the light most favorable to the jury's verdict. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993); *Chambers v. State*, 805 S.W.2d 459, 460 (Tex.Crim.App. 1991). In reviewing the sufficiency of the evidence, all of the evidence must be looked at, regardless of whether properly or improperly admitted. *Miles v. State*, 918 S.W.2d 511, 512 (Tex.Crim.App.1996). The same standard applies to review of both direct and circumstantial evidence cases. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984). If a challenge to the legal sufficiency of the evidence is sustained, appellant is entitled to acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *Cain v. State*, 976 S.W.2d 228, 233 (Tex.App.—San Antonio 1998, no pet.).

■ The trial court charged the jury that if they found beyond a reasonable doubt that appellant intentionally or knowingly caused the death of Cathy by strangling, then the verdict should be guilty. Appellant does not complain that the court's charge improperly set out the essential elements of the crime.

The State's case was founded upon circumstantial evidence and the inferences to be drawn therefrom. Without detailing all of the evidence which could support a rational jury inferring appellant to be guilty, we note briefly some of such evidence. Appellant and Cathy Barnum had a history of domestic problems. Cathy's written statement dated August 2, 1994, said that she believed appellant was contemplating murdering her for her $100,000 life insurance policy.[1] Appellant was aware that Cathy was dating another man while he was in PARC. While living in the PARC facility, appellant told his friend Gladys Blevins that Cathy had filed for divorce, that Cathy was not going to let him return home when he was released, and that he told Cathy if she would not let him come home or see the children, he would kill her. Blevins testified that when she heard Cathy was missing, she "just knew" that Cathy was dead and that appellant had done it. Blevins then reported appellant's statements to a friend on the police force. She asked to remain as a confidential informant because when she talked to appellant, he was very mad, very emotional, and "... I did not know how he would react. And I didn't want to take a chance of risking myself or my child." Appellant was released from PARC, returned home and spent his first night with Cathy and the three boys on December 6, 1994—the date Cathy disappeared.

On the night of December 6th, appellant had the children sleep in the living room with him while Cathy ostensibly was asleep in the bedroom. The bedroom door was near the door to the Barnum's garage where Cathy's car was parked. Cathy's car also disappeared on the night of December 6th. Michelle Norman told appellant that although she could not be sure the person she saw was Cathy, she had possibly sighted Cathy in her car on December 7th. Appellant immediately responded, "you're my witness." An overnight bag found in Cathy's car appeared to have been packed by someone who had access to Cathy's domestic belongings, yet its contents were not consistent with clothing and personal items Cathy would have needed or packed for a trip in December. Appellant told a relative that he had a telephone conversation with Cathy after she disappeared and that she told him she was staying in a house in Canyon, Texas; yet no persons other than appellant, including Cathy's mother, sister, employee, divorce attorney or newfound friend, Blane Jones, claimed to have heard from Cathy after she took her son home from school on the afternoon of December 6, 1994. No question was raised about the pathologist's conclusion that Cathy was strangled.

A rational jury could have inferred from the circumstantial evidence that beyond a reasonable doubt appellant strangled Cathy. Accordingly, the verdict of guilt is

1. The admissibility of such statement is the subject of appellant's issues three and four.

supported by legally sufficient evidence. Appellant's first issue is overruled.

### B. FACTUAL SUFFICIENCY

Appellant next challenges the factual sufficiency of the evidence to support his conviction. We conclude that the evidence was factually sufficient to support the verdict.

 To review the factual sufficiency of a conviction, we first assume that the evidence is legally sufficient under the *Jackson* standard. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We then consider both the evidence favorable to the verdict and the evidence that tends to disprove the verdict. *Id.* As an appellate court, we may reverse a criminal conviction only if the verdict is so against the great weight of the evidence presented at trial as to be clearly wrong and unjust. *Id.* Although we must weigh the evidence, we likewise must give appropriate deference to the jury's determination so that we do not merely substitute our judgment for that of the jury. *Id.* at 136. We consider all the evidence admitted at trial, regardless of whether properly or improperly admitted. *Miles*, 918 S.W.2d at 512.

 It was the province of the jury to weigh the evidence and draw appropriate inferences therefrom. After weighing all of the evidence, a substantial part of which is detailed above, we find that the verdict was not so clearly against the great weight of the evidence as to be manifestly erroneous. We overrule appellant's second issue.

### III. HEARSAY EVIDENCE AND CONSTITUTIONAL RIGHT TO CONFRONT WITNESSES

By his third and fourth issues, appellant asserts that State's Exhibit Number 2 was inadmissible hearsay. He also claims that admission of the exhibit violated his federal and state constitutional rights to con-

---

**2.** References to a Texas Rule of Evidence will be cited as "Rule" hereafter.

**3.** If the exhibit was admissible for any purpose, the trial court's action in admitting it

front witnesses against him. In the alternative, appellant asserts that the trial court erred in failing to give an instruction limiting the exhibit to consideration by the jury only on the issue of decedent's state of mind.

The exhibit complained of was Cathy Barnum's handwritten statement dated August 2, 1994. The language objected to by appellant in State's Exhibit Number 2 reads: "Today I found the attached paper. The paper with figures was written by my husband Barak Lee Barnum. I believe he may be contemplating murdering me for my $100,000.00 life insurance policy." The statement further specified how her property was to be distributed in the event of her death. State's Exhibit Number 3 was the undated list of financial figures written by appellant which included an entry for expenses of a "funeral." The letter concluded that Cathy hoped she was terribly mistaken in her suspicions about appellant. The State offered Exhibits 2 and 3 without limitation. Appellant objected on the basis of hearsay and violation of his sixth amendment right to confront witnesses against him. The State asserted that the letter and attached list were admissible under TEX.R. EVID. 803(3) [2] as an exception to the hearsay rule, and also opposed an instruction limiting the jury's consideration of the exhibit to show Cathy's state of mind. The trial court overruled appellant's objections.

### A. HEARSAY

 Hearsay is not admissible evidence unless excepted by the rules of evidence, a statute, or a rule promulgated pursuant to statutory authority. Rule 802. Rule 803 allows certain hearsay to be admitted. The State offered and the trial court admitted State's Exhibit Number 2 under Rule 803(3) as evidencing Cathy's state of mind or mental state. [3] Rule

---

was not error. *Sewell v. State*, 629 S.W.2d 42, 45 (Tex.Crim.App.1982). However, the State does not urge any basis for admission of the statement other than Rule 803(3).

803(3) provides that the hearsay rule does not exclude a statement of a person's "then existing state of mind, emotion, sensation, or physical condition, (such as intent, plan, motive, design, mental feeling, pain, or bodily health), *but not including a statement of memory or belief to prove the fact remembered or believed.*[4] Rule 803(3)(emphasis added).

To support its position on appeal[5] the State relies on *McDonald v. State*, 911 S.W.2d 798 (Tex.App.—San Antonio 1995, pet. dism'd), and *Williams v. State*, 927 S.W.2d 752 (Tex.App.—El Paso 1996, pet. ref'd). In *McDonald* the declarant/murder victim allegedly told the witness that she had changed the locks to protect herself from the accused. The assertion was offered to demonstrate the decedent's fear; it was not offered for the truth of her belief that the accused might harm her. In *Williams* the victim made statements that she feared the defendant would hurt her. The court held that these statements were exceptions to the hearsay rule because the statements were not offered to prove the truth of the victim's belief that the defendant would hurt her, only her state of mind that she feared he would. *Id.* at 764.

We believe the State's position to be unsound. Cathy's statement is not of the same character as the statements considered in the authorities cited by the State. Cathy's statement internally identifies itself as her belief, and her state of mind is evidenced only by inference. The statement is very similar to an oral statement made by the shooting victim in *Vann v. State*, 853 S.W.2d 243 (Tex.App.—Corpus Christi 1993, pet. ref'd), which was testi-

fied to by the victim's friend to rebut a claim that defendant killed the victim in self defense. In *Vann*, the statement objected to was "I wouldn't be surprised if Cherie was waiting for me at home with a gun and shot me." Cherie later shot the victim and claimed she shot him in defending herself. The State contended the statement was admissible as a hearsay exception evidencing the witness's state of mind. The appellate court disagreed and held the statement was inadmissible hearsay. *Vann*, 853 S.W.2d at 250. Also, in *Buhl v. State*, 960 S.W.2d 927 (Tex.App.—Waco 1998, pet. ref'd), a witness attempted to testify to a prior statement by the defendant that defendant feared the victim because the victim had pulled guns on the defendant in the past. The statement was inadmissible hearsay because the testimony was not limited to defendant's state of mind (fear), but was offered to prove the reason for defendant's alleged fear: that defendant believed or remembered the victim had pulled guns on defendant. *Id.* at 932–33. Similarly, in *Navarro v. State*, 863 S.W.2d 191 (Tex.App.—Austin 1993, pet. ref'd), testimony by the deceased's mother that the deceased said appellant had "put a gun to her head and threatened to kill her," was inadmissible hearsay. The statement reflected that the deceased feared appellant "only by inference from the facts stated." *Id.* at 197.

The language in Cathy's August 2nd written statement which is complained of by appellant is not admissible under the hearsay exception provided by Rule 803(3). Thus it is inadmissible hearsay. The first two sentences of the document are not

---

**4.** The hearsay may, however, be admitted to prove the truth of a memory or belief if it relates to the execution or terms of the declarant's will. *Id.*

**5.** The State also made the argument to the trial court that even if the hearsay was inadmissible because it comprised Cathy's belief or memory, the exhibit would fit within the Rule 803(3) exception because it related to Cathy's will. However, the statement that she believed appellant was contemplating mur-

dering her did not relate to the execution, revocation, identification, or terms of the "will" she proceeded to write, even though the statement may have provided the reason she was making the will. Nor did the State's use of the exhibit in jury argument focus on the execution, revocation, identification, or terms of the "will." The State does not urge on appeal that the language complained of by appellant was related to the execution, revocation, identification, or terms of Cathy's will.

statements of Cathy's state of mind or emotions. They are simply out-of-court statements of events which have occurred. The next sentence is an out-of-court exposition of Cathy's belief. The statement demonstrates Cathy's fear or state of mind, other than her recited "belief," only by inference. These parts of the document were specifically objected to by appellant's counsel and the trial court abused its discretion in admitting them into evidence.

▪ Because Cathy's hearsay statement was erroneously admitted, we must determine whether the error affected appellant's substantial rights. TEX.R.APP. P. 44.2(b). A substantial right has been affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997).

▪ The evidence did not connect Cathy's death to an attempt by appellant to collect life insurance on her life. Cathy's mother testified that the insurance policy referred to in Cathy's statement had lapsed. About a month before Cathy's disappearance, appellant told a friend that Cathy filed for divorce and that he threatened Cathy's life if she did not let him return home or see their children. Appellant's attitude during the conversation was so forceful and emotional that the witness was concerned for her safety and that of her children if appellant discovered that she had contacted the police. Cathy agreed that appellant could stay at home with the children for only one night after he was released from PARC. She did not plan to stay at home that night. Except for a telephone conversation appellant claimed to have had with her shortly after her disappearance, she was not seen alive or heard from again after she took her son home on the evening of December 6th. As noted above, a travel bag found in Cathy's automobile appeared to have been packed by someone other than Cathy. The clothes in the travel bag did not correspond with any type of clothing coordination or seasonal clothing that Cathy would have packed for a December trip. Her travel bag did not include personal items such as contacts, a makeup mirror, or curler pins. Appellant told the police that only Cathy had a set of keys to her car, yet when Cathy's car was located, a set of her car keys was inexplicably found under the seat of the truck in which appellant had been riding. In closing argument the State did not argue that appellant murdered Cathy for her insurance, nor that her death was the result of a continuous course or plan of action by appellant from August through December. The circumstantial evidence of appellant's guilt was strong, regardless of State's Exhibit Number 2. We conclude that the error did not have a substantial and injurious effect in determining the jury's verdict.

Because we determine the statement in question to have been inadmissible hearsay, we do not address appellant's assertion that the trial court erred in failing to give a limiting instruction.[6]

## B. CONFRONTATION OF WITNESSES

▪ The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees the fundamental right of an accused to confront witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The Fourteenth Amendment makes the right applicable to the states. *Id.* The primary interest secured by the Confrontation Clause is the right of cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). The Confrontation Clause does not erect a *per se* barrier against the admission of statements of a declarant who

---

6. Appellant's counsel requested a limiting instruction both at the time the evidence was published to the jury and at the time the jury was charged. See *Rankin v. State*, 974 S.W.2d 707 (Tex.Crim.App.1996), for a discussion of appropriate times to give instructions limiting the purposes for which evidence may be considered.

is unable to communicate to the jury at the time of trial; a rule of *per se* exclusion would frustrate the truth-seeking purpose of the Confrontation Clause. *Idaho v. Wright,* 497 U.S. 805, 824, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Introduction of an out-of-court statement does not violate the federal Confrontation Clause if (1) the person making the statement is "unavailable," and (2) the statement bears adequate indicia of reliability to maintain the integrity of the fact finding process and thereby to maintain the integrity of the verdict. *See Lee v. Illinois,* 476 U.S. 530, 545, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); *Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Penry v. State,* 903 S.W.2d 715, 750 (Tex.Crim. App.1995). The proponent of the out-of-court statement has the burden of proving the unavailability of the person making the statement and the reliability of the statement. *Lilly v. Virginia,* 527 U.S. 116, ——, 119 S.Ct. 1887, 1900, 144 L.Ed.2d 117 (1999); *Wright,* 497 U.S. at 816, 110 S.Ct. 3139; *Loven v. State,* 831 S.W.2d 387, 393 (Tex.App.—Amarillo 1992, no pet.). Sufficient indicia of reliability is inferred if the evidence falls within a "firmly rooted" hearsay exception. *Roberts,* 448 U.S. at 65, 100 S.Ct. 2531; *Loven,* 831 S.W.2d at 393–94. If the statement does not fall within a firmly rooted hearsay exception, the indicia of reliability must be drawn from circumstances surrounding the making of the statement itself; other evidence at trial may not be used to corroborate the contents of the statement and thereby supply the indicia of reliability required by the Confrontation Clause. *Lilly,* 527 U.S. 116 at ——–——, 119 S.Ct. at 1900–01; *Wright,* 497 U.S. at 822, 110 S.Ct. 3139; *see generally, Penry,* 903 S.W.2d at 761–62. A statement not falling within a firmly rooted hearsay exception will be admissible only if circumstances surrounding the making of the statement demonstrate its truthfulness to the extent that cross-examination would be of marginal utility. *Wright,* 497 U.S. at 823, 110 S.Ct. 3139.

 Cathy's death made her unavailable to testify. We have previously determined that the evidence in question was not admissible under an exception to the hearsay rule, thus its reliability was not inferable by its being within a "firmly-rooted" hearsay exception. Therefore, we must examine whether the State proved sufficient indicia of reliability so that appellant's Sixth Amendment rights were not violated by admission of the statement.

The State did not prove the circumstances surrounding the making of Cathy's August 2nd unsworn statement. Attached to the statement was an undated and unexplained list of numbers and notations written by appellant. How Cathy came into possession of the list, her knowledge of the circumstances surrounding its creation, and any other circumstances which would have combined with discovery of the list to result in Cathy's expressed belief that appellant might be planning her murder were not proved. The record contains evidence that Cathy and appellant had marital problems, had been separated on several occasions, and that Cathy claimed to have filed for divorce prior to the time she retained an attorney in December, 1994. The status of the marital or personal relationship between Cathy and appellant at the time Cathy wrote her statement, however, is not evident from the record. The record shows that both Cathy and appellant felt very strongly about their children and their individual relationships with the children. Yet whether any conflict existed in August as to the children's possible status if a divorce were being discussed by Cathy and appellant is completely speculative because of the absence of proof. Nor does the record demonstrate the presence or absence of other specific circumstances surrounding Cathy at the time of the writing such as possible personal relationships similar to her relationship with Blane Jones. No explanation is given for Cathy leaving what seems to be a very important document—the written statement dated August 2nd—in her personal belongings without evidence of anyone knowing of its existence until her mother discovered the statement by happenstance. We conclude

that this record does not contain proof of sufficient indicia of reliability of the complained-of statement to allow its introduction without appellant having opportunity to cross examine Cathy about its contents and the bases for her beliefs. We find that admission of State's Exhibit Number 2 violated appellant's rights under the Sixth Amendment Confrontation Clause of the federal constitution.

 Having determined that admission of Cathy's written statement was a violation of appellant's rights under the Sixth Amendment, we must reverse the judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX.R.APP. P. 44.2(a). *See also Lilly*, 527 U.S. at ——, 119 S.Ct. at 1901. In making our determination we examine the entire record in a neutral, impartial and even-handed manner and do not make our examination "in the light most favorable to the verdict." *See Harris v. State*, 790 S.W.2d 568, 586 (Tex.Crim. App.1989). If pursuant to our neutral review of the record we determine beyond a reasonable doubt that the nature of the error·is such that the error could not have affected the jury, then the error is harmless; otherwise it is not. *Id.* at 586–87. If the error is not harmless beyond a reasonable doubt, we are required to reverse the conviction. TEX.R.APP. P. 44.2(a). In making our decision, we examine the error and all its effects such as (1) the source of the error, (2) the nature of the error, (3) to what extent the erroneous matter was emphasized by the State, (4) the probable collateral implications of the error, (5) how much weight a juror would probably place upon the error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris*, 790 S.W.2d at 587–88. Then we determine whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Id.* We do not focus on whether overwhelming evidence of appellant's guilt exists, or whether the jury would have convicted appellant if it had been compelled to rely only on the untainted trial evidence. *Id.* Nor do we review the evidence and decide appellant's guilt or innocence, thereby substituting our judgment for that of the trial court and jury. *Id.* at 585, 587. Rather, our function is to determine whether the error might possibly have affected the jurors' decision. *Id.* at 587–88.

 The language in the statement complained of was very strong: Cathy believed her husband might be contemplating murdering her for money—her life insurance. When the State first identified the exhibit, appellant's counsel objected to it. The exhibit was not offered into evidence, however, until sometime after it was first identified. At the time the exhibit was offered, appellant's counsel again objected to its admission. Defense counsel clearly stated his concern that although the State ostensibly offered the exhibit to show Cathy's state of mind, the real purpose was to show or prove that appellant was contemplating murdering Cathy in August, 1994, before she disappeared in December. Appellant's counsel requested an instruction to the jury limiting the exhibit's purpose to show Cathy's state of mind. *See* Rule 105(a); *see generally Rankin*, 974 S.W.2d 707. The State opposed a limiting instruction. As part of the State's rebuttal final argument State's counsel read the entire statement to the jury as Cathy's "will." Then, despite the State's having offered the statement as evidence of Cathy's state of mind, and having opposed a limiting instructing, the State's attorney justified defense counsel's expressed concern that the State's real intent was to use Cathy's statement to prove the truth of her belief about appellant's mindset:

> The last words there, *"I hope I'm terrible mistaken." She wasn't.* Today you [sic] found the attached paper, the figures, written by my husband, Barak Lee Barnum, showing the division of money and the division of bills. One of those is a funeral, *shows his state of mind in August, 1994.*

The State's argument implicitly acknowledges that Cathy's statement reflected her belief ("She wasn't [mistaken in her belief]") in appellant's alleged state of mind. *See* Rule 803(3). The argument also urged the jury to consider appellant's allegedly murderous state of mind in August, as evidenced by Cathy's statement and the attached list, in its deliberations. The argument was among the final appeals made to the jury by the State before the jury retired to decide appellant's guilt or innocence.

The State acknowledged to the jury on more than one occasion that its proof against appellant was mainly circumstantial. The State was unable to present direct evidence that appellant killed Cathy, such as an eyewitness to the crime, a confession by appellant, or a murder weapon which could be traced to appellant. In a circumstantial evidence case, an accusation in the handwriting of the dead victim that appellant harbored thoughts of murder is patently strong evidence. The State urges no reason to believe that the jury did not consider it as such, and we see none. The State's reading of Cathy's entire statement to the jury shortly before the jury retired to deliberate implies that the State considered the document language, and the inferences therefrom which the prosecutor argued to the jury, to have been of significance in the State's attempt to convince the jury of appellant's guilt. Under the standards mandated for constitutional error, we cannot say beyond a reasonable doubt that the error did not contribute to appellant's conviction. Appellant's third issue is sustained.

■ Appellant also argues that his right of confrontation under Article I, Section 10 of the Texas Constitution was violated by admission of Cathy's August, 1994, written statement. Appellant's objection to the exhibit in the trial court did not include a timely objection based on his asserted right under the Texas Constitution. Rule 103(a)(1). The issue was not preserved for appellate review. TEX.

R.APP. P. 33.1(a). Appellant's fourth issue is overruled.

### III. COMMENT ON APPELLANT'S FAILURE TO TESTIFY

■ By his fifth issue, appellant contends that during final argument on punishment the State impermissibly commented on appellant's failure to testify, and the court's instruction to disregard did not cure the error. We disagree.

During the State's punishment argument, the prosecutor argued, "Now if Barak Barnum was remorseful, if Barak Barnum was ready to accept responsibility, if Barak Barnum was ready to stand up and accept the consequences of his act, then I think you might be talking about probation...." Appellant's counsel objected to the comment on appellant's failure to testify, asked for a mistrial, and requested that the court give the jury an instruction to disregard the argument. The court sustained the objection, denied the request for a mistrial, and instructed the jury to disregard the argument. The court instructed the jury that a defendant has the right not to testify, and such a decision "cannot be held against him, in any way, shape or form." The trial judge then asked if each member of the jury understood, to which the members of the jury replied in the affirmative.

■ The failure of the accused to testify may not be a subject of argument by the prosecution. *Bird v. State,* 527 S.W.2d 891, 893 (Tex.Crim.App.1975). The facts, circumstances of the case, and the context of the jury argument in question must be analyzed on a case-by-case basis to test whether the character of the language was such that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *See Dickinson v. State,* 685 S.W.2d 320, 323 (Tex.Crim.App.1984). A comment regarding a defendant's remorse or his failure to "stand up" may be interpreted as a comment on his failure to testify. *See Bower v. State,* 769 S.W.2d 887, 907 (Tex.

Crim.App.1989) *overruled on other grounds by Heitman v. State,* 815 S.W.2d 681, 685 (Tex.Crim.App.1991); *see Mason v. State,* 668 S.W.2d 726, 726–27 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd). When the State improperly makes a direct comment on a defendant's failure to testify, an instruction to disregard usually does not cure the error. *Montoya v. State,* 744 S.W.2d 15, 37 (Tex.Crim.App. 1987) *overruled on other grounds by Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim. App.1996). A comment, however, which only indirectly refers to the defendant's failure to testify can usually be cured by an instruction to disregard. *Id.* An instruction regarding an improper jury argument may cure error unless "the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment." *Caldwell v. State,* 818 S.W.2d 790, 801 (Tex.Crim.App.1991) *overruled on other grounds by Castillo v. State,* 913 S.W.2d 529, 530–35 (Tex.Crim. App.1996); *Bower,* 769 S.W.2d at 907 (citing *McKay v. State,* 707 S.W.2d 23 (Tex. Crim.App.1985)).

The argument could appear to a reasonable juror to be at least an indirect comment on appellant's failure to testify at the punishment phase of trial, admit his guilt, and express remorse. We do not believe, however, that the argument was so direct and inflammatory that it could not be cured. First, the argument was not an unequivocal reference to appellant's failure to take responsibility as of the trial date. Second, the court sustained appellant's objection, gave a clear and thorough instruction to the jury to disregard the comment, and the members of the jury stated that they understood the instruction. Finally, after appellant's objection was sustained, the prosecutor clearly related further argument concerning appellant's apparent lack of remorse to events surrounding and immediately following Cathy's disappearance, and not to appellant's conduct as of the time of trial. The trial court's instruc-

tion and decisive action cured any improper effects of the jury argument. We overrule appellant's fifth issue.[7]

Having sustained appellant's third issue, we reverse the judgment of the trial court and remand the case for a new trial.

---

7. Justice Quinn concurs with the reasoning and conclusions of the majority on issues one through four. He concurs with the result only on issue five.