NO. 07-01-0403-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 25, 2002

_____

FRANK CHRIS MENDEZ, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;

NO. 2407; HONORABLE GORDON H. GREEN, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In this proceeding, appellant Frank Chris Mendez, Jr. appeals his conviction for the offense of murder and the jury-assessed punishment, enhanced by two prior convictions, of 40 years confinement in the Institutional Division of the Department of Criminal Justice and a fine of $10,000. Finding no reversible error, we affirm the judgment of the trial court for the reasons set forth.

In five issues, appellant complains (1) the trial court erred in admitting into evidence the telephone conversations between witness Johnny Sanchez and the deceased, Sandra Jenkins, in the hours preceding her death, (2) the trial court erred in admitting into evidence testimony concerning electronic monitoring of appellant at the time of the offense, (3) the trial court erred in overruling his motion for a mistrial when testimony was presented to the jury as to an extraneous offense, (4) the evidence is legally insufficient to support the verdict, and (5) the evidence is factually insufficient to support the verdict.

On December 31, 2000, appellant and his live-in girlfriend, Sandra Jenkins (Sandra), who was also the mother of his infant daughter, held a New Year's Eve party at their apartment. Most of the guests left around 12:30 p.m. There was testimony that at the party, Sandra was drinking beer and also smoked marijuana with several of the guests. However, there were no signs of an argument between Sandra and appellant. Sometime later, a neighbor observed appellant and Sandra standing outside the apartment and soon after that, he could hear both Sandra and the baby crying inside the apartment. Shortly thereafter, appellant appeared at the neighbor's door and handed them his infant daughter, who was covered in blood but was apparently unhurt. Appellant told them to take care of the child. One of the occupants then called 911.

A guest at the party, Johnny Sanchez, received several phone calls from Sandra beginning at 1:20 a.m., in which she asked him to either come get appellant or her and the

baby because appellant was going to kill her. In the second call, she stated that appellant had pulled a knife on her. Sanchez also talked to appellant during the second call, and appellant said Sandra was upset because of a phone call he made to his mother, but that they were all right. Sanchez received at least one other call from Sandra after that conversation as shown by Caller ID, but he did not answer it.

Officer Brandon Neal of the Friona Police Department was dispatched to the scene at 2:11 a.m. Upon his arrival, he observed appellant outside the apartment. Appellant told him that Sandra needed help. When Neal entered the apartment, he saw Sandra slumped on the sofa with blood stains on her face. He also observed a puncture wound on the right side of her abdomen. Sandra was unresponsive. Appellant told him they had an argument and that Sandra had thrown the phone. There were also several overturned chairs and broken plates. Appellant admitted he had hit Sandra. EMS personnel arrived and transported Sandra for treatment. She later died from massive internal bleeding and shock due to arterial and venous injury from an abdominal stab wound.

In his first issue, appellant complains of the admission of the content of the telephone calls Sandra made to Sanchez as being hearsay. The court initially sustained the objection, but the State argued in a hearing outside the presence of the jury that the testimony was not offered to prove the truth of the matter asserted but as a res gestae statement and to show the victim's state of mind because the defense was raising suicide

3

as an explanation of Sandra's abdominal injury. The court found that the statements fit within an exception to the hearsay rule.

Hearsay is a statement other than one made by the declarant while testifying at trial offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is not admissible except as prescribed by the rules. *Id.* 802. An exception to the hearsay rule is a statement of the declarant's then existing state of mind, emotion, sensation or physical condition, but does not include a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will. *Id.* 803(3). Other exceptions are statements describing or explaining an event or condition made while the declarant is perceiving the event or condition or immediately thereafter and statements relating to a startling event or condition made while the declarant is under the stress of excitement caused by the event or condition. *Id.* 803(1) and (2).

The testimony elicited at the hearing on appellant's objection was as follows:

Q. (BY MR. ACTKINSON) You received a phone call from Sandra?

A. Yes.

Q. And you recognized her voice?

A. Yes.

Q. And you think this phone call you got about 1:20?

A. Somewhere around there, yes.

4

Q. And what did she say to you?

A. She was - - she told me to come get Franky out of there, said he's going to kill me, come get Franky or come get me and my daughter out of here.

Q. And what did you do based upon what she told you?

A. I just told her, you know - - what did I do?

Q. Yes.

A. I just talked to her, I told her that he wasn't going to kill her, you know. I said, what's going on. And she was just hysterical.

Q. She was in fact hysterical?

A. Yes.

Q. And she asked you to come take her out of the house or take Franky out of the house?

A. Yes.

Q. Or come take her and the baby out of the house because she thought Franky was going to kill her?

A. Yes.

Q. Did you in fact talk to Franky?

A. On the second phone call I did.

Q. So on the first phone call you did not?

A. No.

Q. Was there a second phone call?

A. Yes.

Q. And who was that?

5

A.  It was Sandra.

Q.  And how much later did you receive the second phone call?

A.  Not much later, I'm going to say at least ten minutes.

Q.  So about 1:30 she's calling back to your house again?

A.  Yes.

Q.  And what did she say the second time?
A.  She was yelling more, she says - - she wanted me to get Franky out of there.  She said, I know he's going to kill me, he's got a knife.  And I asked her, where's Franky at.  She said, he's right here.  Let me talk to Franky, so I talked to him and asked him what was going on, and he just told me that she was mad because she was talking - - he was talking to his mom in Spanish over the phone.

Q.  And this is the conversation that you had with Franky?

A.  Yes.

Q.  He was explaining to you why Sandra was mad?

A.  Yes.

Q.  And did you ask him about having the knife?

A.  No, I didn't, I didn't ask him.  All I asked him, are you guys okay.  He says, we're all right.  I said, are you sure.  And he said, yeah.

Q.  Did you talk to Sandra again on that phone conversation.

A.  I talked to Sandra again.

Q.  And what did you tell her?

A.  I told her everything is going to be all right.  He's not going to kill you.  She kept saying, he's going to kill me tonight, Johnny, come and get me.

Q.  And then that phone conversation ended?

6

A.  Yes.

Q.  And then did she call you a third time?

A.  The phone was ringing and I saw - - I looked at the Caller ID and it was his phone number, and I didn't answer it.

Q.  And where was that phone call, how much later after the second phone call?

A.  Not too late after the second one.

Q.  Five or ten minutes?

A.  Something like that.

Q.  But you didn't answer that phone?

A.  No, I didn't.

Q.  Had you done this before, had you acted as a mediator between them before?

A.  No, not between them.

Q.  Had Sandra ever called you before because Frank had hit her or asked you to come help her?

A.  No.

Q.  Why did you not go over there?

A.  I thought they were just having a family argument, you know.

Q.  You had seen them less than an hour earlier and they were not having any disagreement?

A.  They weren't arguing, they were happy, so that's why I thought maybe something happened that they were just having a little argument.

Q.  And without question, you recognized the voice of Sandra and you recognized the voice of Frank and you knew who you were talking to?

7

A.  Yes.

Appellant argues that the statements by Sandra that he was going to kill her and he had pulled a knife on her did not describe her state of mind, but represented only a belief held by Sandra and were offered to prove the truth of the matter asserted.

We review the trial court's ruling on the admissibility of hearsay under an abuse of discretion standard. *Lawton v. State,* 913 S.W.2d 542, 553 (Tex.Crim.App. 1995), *cert. denied*, 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996).   Appellant relies on *Anderson v. State*, 15 S.W.3d 177 (Tex.App.--Texarkana 2000, no pet.), for the proposition that a victim's state of mind prior to any fatal incident is generally neither at issue nor probative of any material issue in a murder prosecution. *Id.* at 184.  However, that court noted there was an exception for defense claims of accident, self-defense, or suicide.  *Id.*  In the case at bar, appellant presented evidence that Sandra had been depressed and wanted to join a cousin who had been killed in a car accident in an attempt to demonstrate that her death was a suicide.  Therefore, evidence showing that she was afraid of appellant in the hour preceding her death would have relevance as to whether her death was the result of a suicide or other external means.

Even if the evidence is relevant, appellant relies on *Dorsey v. State*, 24 S.W.3d 921 (Tex.App.--Beaumont 2000, no pet.) and the previous ruling of this court in *Barnum v. State*, 7 S.W.3d 782 (Tex.App.--Amarillo 1999, pet. ref'd), for the proposition that statements from the victim that the defendant might kill her reflect a belief which would not

8

be admissible under the state of mind exception to the hearsay rule.  In *Dorsey,* the victim made several statements to co-workers and friends prior to the incident that she was afraid to divorce the defendant, the defendant held her down on the bed with a knife to her throat, he held a gun to her head up under her throat and in her mouth, that if anything ever happened to her it meant that the defendant had killed her, and that the defendant followed her to work every day to make certain she was there.  The court found that her statement describing her fear of the defendant was admissible to show her emotional state at the time she made the statement, but the statement to the effect that if anything happened to her appellant had killed her was only a belief.  *Dorsey,* 24 S.W.3d at 928.  The other statements that the defendant held a knife to her throat, a gun to her head and throat and followed her to work everyday were simply a recounting of her memory of events.  *Id.* at 928-29.

In *Barnum,* the victim had written a statement which read:  "[t]oday I found the attached paper.  The paper with figures was written by my husband Barak Lee Barnum. I believe he may be contemplating murdering me for my $100,000.00 life insurance policy." We found the first two statements to be simply statements of events which have occurred. *Barnum,* 7 S.W.3d at 791.  The last sentence was a statement of the victim's belief and demonstrated her fear only by inference from that belief.  *Id.*

In contrast, in this instance, Sandra was not describing a past incidence from memory or her opinion as to what might happen at some unspecified time in the future.

9

She was describing an ongoing occurrence that was happening at that moment. Her statements that she either wanted Sanchez to come get appellant or her and the baby because he was going to kill her did not just reflect her belief that appellant might kill her someday in the future, but a present fear that he might do so imminently, thus demonstrating her fear at that moment caused by events that were occurring at the time of the statement.

Similarly, in *Williams v. State*, 798 S.W.2d 368 (Tex.App.--Beaumont 1990, no pet.), the victim, who had just been sexually assaulted and was crying, spoke to a deputy and told him that her assailant was going to come back and kill her and her children. The testimony was held admissible to prove her then existing state of mind. *Id.* at 371.

Even if the testimony was not admissible as evidence of her state of mind, we believe it would have been admissible under the excited utterance exception to the hearsay rule. In order for the excited utterance exception to apply, the statement must be the product of a startling event, the declarant must be dominated by the emotion, excitement, fear, or pain of the event, and the statement related to the circumstance of the startling event. The pertinent inquiry is whether the cumulative effect of the three requisites combined is sufficient to show the reliability of the statement. *Sellers v. State*, 588 S.W.2d 915, 918 (Tex.Crim.App. 1979).

In this situation, appellant and Sandra had been observed by others during the evening preceding the incident and seemed happy. However, at some point after the

10

guests left the party, that situation changed and appellant picked up a knife which caused fear in Sandra. As a result, Sanchez described Sandra as hysterical. She pleaded with Sanchez to either come and get appellant or take her and the baby away from the apartment because she believed appellant would kill her. It is clear that Sandra was dominated by the emotion arising from their argument and from appellant having a knife.

Appellant further argues that the probative value of Sandra's statements is outweighed by the danger of unfair prejudice under Rule of Evidence 403. Appellant's objection at trial was that the testimony was hearsay, not that the prejudicial effect outweighed the probative value. Therefore, the issue has not been preserved. *Williams v. State*, 995 S.W.2d 754, 760 (Tex.App.--San Antonio 1999, no pet.). The trial court did not abuse its discretion in allowing the admission of the testimony. Appellant's first issue is overruled.

In his second issue, appellant complains of the court's admission into evidence of the testimony of Chris Salinas, appellant's parole officer, that appellant wore an electronic monitor at the time of the alleged offense. Appellant objected to the testimony at trial on the basis that the probative value was limited because no doubt had been cast on the fact he was present at the crime scene, and the prejudicial value was high because it indicated to the jury that appellant was on parole for another crime. The specific authority appellant cited at a hearing outside the presence of the jury was Rules 404B, 403, 608, and 609F

of the Rules of Evidence.[1]  The State noted that appellant was on parole for burglary, which was charged in the enhancement paragraph of the indictment and, because the case was based on circumstantial evidence, the State should be permitted to prove that appellant was present at the time of Sandra's injury.

The court ruled that the evidence was probative under Rule 404B. The State further agreed to limit any testimony as to the witness's employment as a parole officer and to show that he was merely the custodian of the records.  In Salinas's testimony at trial, there was no mention of what job Salinas held or that appellant was on parole for another crime. The witness simply stated he brought some electronic monitoring records pertaining to appellant, he had reviewed the records, and that according to the records, appellant had been within 150 feet of his apartment between 10:10 a.m. on December 31, 2000, and 2:58 a.m. on January 1, 2001.

On appeal, appellant argues the evidence is cumulative because a neighbor, Lorenzo Sierra, Jr., testified that he observed appellant standing in the doorway of the apartment within minutes of when Sandra was stabbed.  Further, he argues, evidence of other crimes is not admissible to prove the character of a person.  Finally, he cites *Cooper v. State*, 901 S.W.2d 757 (Tex.App.--Beaumont 1995, pet. dism'd), for the proposition that the State is not entitled to "set the stage" for a witness to testify to facts not otherwise at issue, because the State asserts the witness will rebut a defensive theory.

---

[1]Appellant also challenged the authentication of the records, but has not raised that issue on appeal.

12

Rule 404(b) of the Rules of Evidence provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show he acted in conformity with that character. Tex. R. Evid. 404(b). However, in this instance, there was neither direct mention of any crime nor of the fact appellant was on parole. Thus, although the jury may have wondered about the use of electronic monitoring, there was no direct evidence that appellant had been convicted of a crime or what that crime may have been. The only evidence before the jury was of electronic monitoring to prove appellant's presence at the scene during the period of time when the crime took place.

Although appellant argues that the State may not "set the stage" with evidence of appellant's presence until he has testified he was not present at the time of the incident, the State has the burden of proving beyond a reasonable doubt that appellant intentionally and knowingly caused Sandra's death by stabbing her with a knife, which necessarily requires the State to prove his presence at the crime scene. In contrast, the *Cooper* case on which appellant relies involved evidence of anal intercourse with the defendant's girlfriend to show a pattern of behavior that he also allegedly had anal intercourse with her two children. The court found that, in addition to the fact the evidence was not relevant as to identity or intent, the children had not yet been questioned at that point in time and therefore, any impeachment of their testimony was not yet a problem for the State to address with the mother's testimony. *Cooper*, 901 S.W.2d at 762.

13

In this case, there was testimony from a neighbor that he had seen appellant outside the apartment immediately preceding the stabbing. Indeed, he testified it was about 20 minutes prior to the time appellant brought the baby to his apartment. It would have been possible for appellant to leave the apartment in that 20 minutes, and therefore the evidence is not necessarily cumulative.

Rule 403 provides that evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, by considerations of undue delay, or needless presentation of cumulative evidence. *Id.* 403. We have already determined that the evidence had probative value. Further, precautions were taken so that any prejudicial effect of the testimony was minimal. Thus, it cannot be said that the prejudicial value substantially outweighed the probative value or that the trial court abused its discretion in permitting the admission of the evidence. Appellant's second issue is overruled.

Appellant complains in his third issue that the trial court should have granted a mistrial when testimony was presented by Sandra's mother concerning an extraneous offense he committed. The objectionable testimony is as follows:

Q. Now, prior to her death, where did your daughter live, where was her residence?

A. When she died?

Q. Yes, ma'am.

14

A. In Friona.

Q. And did she live at those apartments?

A. Yes, sir.

Q. And who was she living with?

A. With Franky, he had just moved back in after he got out of the pen.

At that point, appellant moved for a mistrial because the jury had been informed that he had been in prison. The court denied the motion for mistrial, but offered to give an instruction to disregard. Before the instruction was given, appellant also objected on the basis of Rules 403 and 404 of the Rules of Evidence. The court sustained the objection as to relevancy and instructed the jury not to consider the witness's last answer as evidence for any purpose.

Appellant concedes that error in the admission of improper testimony will usually be cured by an instruction to disregard; however, he argues that, in this instance, the instruction was insufficient to cure the harm created by the testimony. This is so, he posits, because the witness had been warned not to make any such remark and it was therefore calculated to inflame the minds of the jury. He also notes the weak factual basis of the case in asserting that no limiting instruction could cure the impression left on the jury.

Appellant cites *Tate v. State*, 762 S.W.2d 678 (Tex.App.--Houston [1st Dist.] 1988, pet. ref'd) and *Govan v. State*, 671 S.W.2d 660 (Tex.App.--Houston [1st Dist.] 1984, pet.

15

ref'd), as authority for his argument that these cases involved instances in which the prosecutor violated a court order in making reference to an extraneous offense or brought a witness to the stand for the sole purpose of extracting testimony of an extraneous offense after he had assured the court he would not do so. *Tate*, 762 S.W.2d at 681; *Govan*, 671 S.W.2d at 663. In the case at bar, the State did not ask a question that would ordinarily extract information as to an extraneous offense, it merely asked the witness who Sandra lived with. Appellant notes that the remark followed the testimony about electronic monitoring, but that neither that evidence nor the remark by Sandra's mother was calculated by the State to inflame the jury. We believe the instruction to disregard would have cured the error in the admission of the testimony. The third issue presented by appellant is overruled.

Appellant's fourth and fifth issues challenge the legal and factual sufficiency of the evidence to support the conviction. Because appellant has briefed the issues together, we will likewise discuss them together. The standards by which we review legal and factual sufficiency challenges are now so well known that it is unnecessary for us to restate them. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). We also must remember that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and it may accept or reject any part of that testimony. *Cain v. State*, 958 S.W.2d 404, 407 n.4 (Tex.Crim.App. 1997).

Appellant was charged in the indictment with intentionally and knowingly causing Sandra's death by stabbing her with a knife. He alleges that there is a material variance between the indictment and the proof at trial because the police could not identify any specific knife as the murder weapon, one of the doctors testified he could not tell the difference between a knife wound and a wound caused by another object, no knife was entered into evidence at trial, and there was no fingerprint evidence to show that he possessed any instrument which caused Sandra's injury.

In a prosecution based on circumstantial evidence, it is not required that every fact point directly and independently to the guilt of the accused but the cumulative force of all the incriminating circumstances may be sufficient. *Barnes v. State,* 876 S.W.2d 316, 321 (Tex.Crim.App.), *cert. denied,* 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *Vaughn v. State*, 607 S.W.2d 914, 921 (Tex.Crim.App. 1980). In this instance, Sandra and appellant both resided in the apartment where she was found by a police officer with a puncture wound in her abdomen. Sandra was not breathing when emergency medical personnel arrived and they worked on her for 26 minutes in an attempt to get her to begin breathing before transporting her. She was transferred to the Parmer County Community Hospital and later to Hereford where emergency surgery was performed.

Guests at the party that evening thought both Sandra and appellant seemed happy. However, within an hour prior to the 911 call, Sandra had made several phone calls to Sanchez, expressing her imminent fear of appellant and saying he had a knife. Appellant

17

himself acknowledged to that same friend that he and Sandra were arguing. Electronic monitoring showed that appellant had not been more than 150 feet away from the apartment for a number of hours prior to the arrival of the police officer. That officer was dispatched to the apartment after a neighbor called 911 after appellant left his daughter, in blood-stained clothes, with the neighbor. Appellant admitted to the officer that he had struck Sandra in the face. The apartment was also in disarray as though there had been a scuffle. Several knives were found in the apartment in various locations, and later Roberto Dominguez, a maintenance man at the apartment complex found a knife about 20 feet from the back door of appellant's apartment after seeing a trail of blood drops in the snow. Law enforcement personnel observed blood stains on the back door, stair walls and bannister, in a sink, and leading to a beer can outside the back door. Photographs taken of appellant's hand showed cut marks on them.

Dr. Nadir Khuri performed surgery on Sandra in an attempt to save her life. He testified that she had a stab wound in her belly that protruded into the iliac artery and vein. The wound was about six inches deep and slightly less than an inch wide. He testified that she hemorrhaged to death internally as a result of that wound. According to Dr. Khuri, the object used to make the wound was a flat, sharp object, although he agreed it could have been a flat, sharp piece of glass if it was long and sturdy enough.

One of Sandra's friends, Sara Street, provided evidence that Sandra had mood swings and had been depressed. Sara also testified that Sandra drank alcohol, used

18

marijuana, cocaine, and Prozac. Sandra had recently been arrested for driving while intoxicated, and there was testimony of conflict between Sandra and her mother, who had allegedly threatened to take Sandra's child from her. Sara stated she was concerned that Sandra might hurt herself.

In *Reeves v. State*, 969 S.W.2d 471 (Tex.App.--Waco 1998, pet. ref'd), *cert. denied,* 526 U.S. 1068, 119 S.Ct. 1462, 143 L.Ed.2d 547 (1999), the cause, time, and location of death were not known. There was also no physical evidence of foul play to connect the defendant to the murder. However, the defendant was the last one to see the victim alive, he had previously abused her, he had the best opportunity and a motive to kill her, he told conflicting stories about her whereabouts, he went camping the day after she disappeared in the area where her body was found, and his actions immediately after her death, such as washing his truck, disposing of his sleeper sofa, and replacing carpet indicated he was hiding something. The evidence was held to be both legally and factually sufficient to support the verdict. *Id.* at 479-80.

In this instance, the location, approximate time, and the injury leading to Sandra's death are known. Although there is no fingerprint or DNA evidence connecting appellant to the crime, there is evidence that appellant was threatening Sandra with a knife shortly before her injury and she believed he was going to kill her. There is also evidence that appellant was present in the apartment at the time of Sandra's injury, and he admitted he struck her in the face. A number of knives were found inside the apartment and one was

19

found outside the back door. The jury was free to resolve any inconsistencies in the evidence and conclude that appellant inflicted the lethal injury on Sandra with a knife as opposed to it being a self-inflicted injury or an injury by some other object. We believe a rational jury could have found the essential elements beyond a reasonable doubt, and that such a finding is not clearly wrong or unjust. Appellant's fourth and fifth issues are overruled.

Finding no reversible error, we affirm the judgment of the trial court.


John T. Boyd
Chief Justice

Do not publish.

NO. 07-01-0403-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 25, 2002

_____

FRANK CHRIS MENDEZ, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;

NO. 2407; HONORABLE GORDON H. GREEN, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

CONCURRING OPINION

I concur in the result.

Phil Johnson
Justice

Do not publish.