Carl Edward GOVAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–83–0440–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 3, 1984.

Randy Schaffer, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before WARREN, BASS and COHEN, JJ.

OPINION

WARREN, Justice.

A jury found appellant guilty of aggravated robbery and assessed his punishment at eight years confinement.

In three grounds of error appellant urges that:

(1) the evidence was insufficient to show that Patricia Rhead was robbed, as alleged in the indictment;

(2) the court erred in allowing Ronald Towery to testify that the robbers stole almost $48,000 from the bank; and

(3) the trial court erred in denying appellant's motion for mistrial after Detective O.G. King testified that there had been numerous bank robberies in Houston with the same type of modus operandi as the offense on trial, and that these bank robberies ceased after the arrest of appellant and his brother.

We sustain the third ground of error, and reverse and remand.

On September 13, 1982, two men armed with .45 caliber pistols entered the Allied Beltway Bank in Houston, disarmed the security guard, ordered Patricia Rhead to stand over her typewriter and stretch out her hands, ordered the tellers to give them money, and after receiving the money fled from the bank. A passenger in a car near the bank saw the robbers fire a shot into the bank window and drive away in a blue Chevrolet Camaro. He followed them to an apartment complex, called the police, and showed the car to the officer, which was later determined to belong to a girlfriend of appellant's brother. When the car was ultimately located, the girlfriend and appellant, who were both sitting in the car, were arrested. Appellant's brother was arrested shortly afterwards. Appellant was identified as one of the robbers by the passenger and by Mrs. Rhead.

Appellant's first complaint is that the evidence failed to show that Patricia Rhead was robbed as alleged in the indictment. The indictment in pertinent part, reads as follows:

... the Defendant, heretofore on or about September 13, 1982 then and there unlawfully while in the course of committing theft of property owned by PATRICIA RHEAD, hereafter styled the Complainant, and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place the Complainant in fear of imminent bodily injury and death, by using and exhibiting a deadly weapon, namely, a firearm.

The evidence shows that Patricia Rhead was the mini bank manager and was in charge of new accounts. Although she did not exercise the immediate control over the money taken, it was shown that her managerial position at the bank established

her greater right to possession of the money as opposed to any right of the robbers. It is sufficient if a natural person acting for the corporate entity has some degree of care or control over the stolen property, and thus a greater right to possession of the property than the accused. *Compton v. State*, 607 S.W.2d 246 (Tex.Crim.App. 1980 (on State's Motion for Rehearing)). A vice president of the bank testified that although Rhead, as a manager, did not ordinarily physically handle the money, as would the bank's tellers, that she did have dual control over the money with the teller. Further, it is not necessary that the victim of theft and the victim of the robbery be the same person. *Ulloa v. State*, 570 S.W.2d 954 (Tex.Crim.App.1978).

Appellant's placing Patricia Rhead in fear of her life by use of a deadly weapon was done in furtherance of and in the course of commission of the robbery.

■ The evidence was sufficient to prove the allegations made in the indictment. Tex.Penal Code Section 29.02.

■ Appellant next claims that the trial court reversibly erred in allowing a bank vice president, over objection, to testify that the robbers stole almost $48,000 from the bank, as the testimony was hearsay and violated the best evidence rule.

When the prosecutor asked the witness how much money was taken in the robbery, defense counsel objected, "unless its from the business records." The witness then responded that he knew the figure because it had been taken from the business records. Defense counsel again objected and insisted on the business records being introduced. After a voir dire examination of the witness, defense counsel informed the court that the witness was not qualified to testify as to the amount of money taken.

The prosecutor then was allowed to lay a predicate for the offering of the business records, but instead of offering the records he asked the witness how much money was taken and the witness replied, "$47,-884.40."

Although that testimony was inadmissible as presented, we see no clear prejudice to appellant. *Garrett v. State*, 641 S.W.2d 232 (Tex.Crim.App.1982). In *Garrett*, the hearsay testimony was clearly prejudicial and had the effect of bolstering the State's witness. In our case, the evidence was clearly superfluous because a teller had previously testified that $5,000 was taken from her. The State had no burden to prove the exact amount taken.

In his final ground of error appellant urges that the trial court reversibly erred in refusing to declare a mistrial after Detective O.G. King testified that there had been numerous bank robberies in Houston with the same type of modus operandi as the offense on trial, and that these bank robberies ceased after the arrest of appellant and his brother.

The challenged testimony follows:

Q. State your name for the record, please, sir.

A. Detective O.G. King.

Q. Are you the same Detective O.G. King that testified earlier in this case?

A. Yes, sir.

Q. The same Detective King who testified that you investigate most all of the bank robberies in Houston?

A. I work them all, yes.

Q. You're aware of the circumstances of this bank robbery and what's called the M.O. or modus operandi?

A. Yes, I am.

Q. Do you work on few or many bank robberies with this same type of activities on the part of the crooks?

Mr. Mewis: I would object to him trying to bring in extraneous offenses.

Mr. Magliolo: We're not, Your Honor.

The Court: Continue.

Q. Are you aware of the circumstances surrounding the arrest of the Govan brothers?

A. Yes, sir.

Q. After the arrest of the Govan brothers, what happened as far as bank robberies of this nature?

A. According to my records and everything at the time this bank robbery happened, we had numerous cases with the type of M.O., the same type people. Once we arrested these people, that situation stopped.

Mr. Mewis: I would object to them attempting to introduce extraneous offenses and trying to imply that this man was doing a lot of bank robberies. There is no evidence whatever. I would object. I objected before, and now he has gone into it.

The Court: Sustained.

Mr. Mewis: Judge, I would ask the jury to be instructed to disregard.

The Court: The jury is not to consider it for any purpose. Totally disregard.

Mr. Mewis: I would move for a mistrial. It is going to be hard for the jury to put that out of their minds.

The Court: That will be denied.

Mr. Magliolo: Pass the witness, Your Honor.

 Evidence of an extraneous offense is never admissible unless proof is offered that the defendant committed it. *Tippins v. State,* 530 S.W.2d 110 (Tex. Crim.App.1975). If evidence of an extraneous offense is admissible under one of the several exceptions, the offense must be proved, and it must be shown that the defendant was the perpetrator. *Fentis v. State,* 528 S.W.2d 590 (Tex.Crim.App.1975). Neither a crime nor a perpetrator was shown in our case. Instead a non sequitur was used to convey to the jury that not one, but many robberies had been committed by appellant.

We consider this testimony especially objectionable because the prosecutor assured the court prior to the colloquy that he would not "bring in" extraneous offenses. Further, it is clear that this rebuttal witness was recalled solely for the purpose of giving the inadmissible testimony, which as far as we can perceive would never be admissible under any situation.

The evidence of guilt was not so overwhelming that the admission of the extraneous offenses could be considered harmless. Appellant presented an alibi witness who testified that appellant was present in the unemployment office in Palestine, Texas, some distance from Houston, on the day of the robbery; the testimony of the State's witnesses who made in-court identifications of appellant was disputed by Detective King regarding their identification of appellant and his brother at a lineup; and the robbers covered their heads with stockings while in the bank, making positive identification by the bank's employees difficult.

As the admission of the testimony concerning extraneous offenses was error of such a nature that could probably not be cured by instruction, we must reverse and remand the cause for retrial.