Floyd Lawrence TATE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–87–00611–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 23, 1988.

Rehearing Denied Dec. 22, 1988.

Douglas M. O'Brien, Moen, Cain, Royce & O'Brien, Houston, for appellant.

John B. Holmes, Dist. Atty., for appellee.

Before COHEN, JACK SMITH and STEPHANOW, JJ.

## OPINION

COHEN, Justice.

A jury found appellant guilty of murder, found two enhancement allegations to be true, and assessed punishment at 60 years imprisonment.

■ Appellant asserts that reversible error occurred when the prosecutor cross-examined his co-defendant about an extraneous offense in which appellant was implicated.

Appellant was tried jointly with his son and co-defendant, Terrence Eugene Tate, whose appeal is pending before another panel of this Court. *Tate v. State*, No. 01–87–00612–CR.

Appellant and Terrence Tate were represented by different attorneys. Appellant did not testify. Terrence Tate testified at the guilt stage only. Terrence testified that the deceased approached a car containing him and appellant, demanded that Terrence exit the car, knocked Terrence to the ground, and threatened to kill him. He testified that the deceased produced a shiny object and that he heard a click, which he associated with a knife. Terrence testified that appellant then came to his aid, struck the deceased with a chain, and struggled with the deceased, whereupon appellant and the deceased fell to the ground with appellant on top. Terrence testified that when appellant arose, the knife was in his hand and the deceased had been stabbed. He testified that he and appellant then left in their car along with a witness, Debbie Prosper.

Debbie Prosper was the State's sole eyewitness. She testified that she, the Tates, and the deceased had been drinking beer at a nearby convenience store shortly before the killing. She had known the deceased for at least five years. She testified that the deceased asked appellant for a ride home, but appellant refused. Prosper and the deceased then sat on appellant's car talking and drinking beer, while appellant and Terrence sat inside the car. Half an hour later, appellant left, and Prosper and the deceased walked to the bus stop. After about 20 minutes, the Tates drove by,

and the deceased flagged them down. The deceased talked to the Tates from the passenger side, where Terrence was seated. Terrence then got out of the car and began beating the deceased with a chain. After the deceased caught the chain, appellant approached the deceased, who was unarmed, and stabbed him while the deceased tried to apologize.

Prosper left the scene with the Tates voluntarily and stayed with them overnight. She testified that after the attack, appellant had stated that the deceased had done something to Terrence that he did not like.

Prosper never saw the deceased with a weapon and never saw him strike appellant or Terrence Tate. Prosper testified that she was "positive" that neither appellant nor Terrence searched the deceased's pockets or took any money or jewelry from him. Finally, Prosper admitted that she was on probation for forgery at the time of the killing and at the time of trial.

While cross-examining Terrence Tate, the prosecutor asserted the commission of an extraneous offense as follows:

Question: Have you left anything out, Mr. Tate, as to where you went after you left your grandparents house and the grocery store?

Answer: No, sir.

Question: Didn't your father (appellant) and you go on a lone mission to score happiness?

Answer: No, sir.

Question: Isn't it a fact that you went and scored some heroin with your father (appellant) after this offense?

The jury was retired, and the prosecutor was questioned under oath by the defense attorneys and the trial judge regarding any good faith legal basis he had for asking these questions before the jury. The prosecutor conceded that nothing in the offense report showed that the Tates purchased heroin just after the killing or on any other date. The prosecutor explained that there were references to heroin in his offense report, including an assertion by Debbie Prosper that the Tates were "both using heroin." Finally, he mentioned a reference in appellant's penitentiary packet regarding a drug treatment program for heroin.

The court then questioned the prosecutor:

The Court: Do you have anything in that offense report or in (Prosper's) statements that say that on that night that it was done? Not the next night or the night before. We are talking about the night of this alleged offense?

Mr. Munier: Probably no. It is strictly up to interpretation. I don't see it as strictly that night. It is a continuing thing. It is a continuing thing where Ms. Prosper is there the next day. She saw the whole transaction. It is a continuing thing. The State contends that it is a continuing thing that continues until Ms. Prosper left the next day. She saw the whole thing.

I also have Sergeant Evans who will testify that they found some syringes in the house (where the Tates were arrested), which is indicative of heroin use. Furthermore your Honor, the State's position would be that counsel for the defense, Mr. McLean, has brought up presence of a syringe at the scene (of the killing). I think, unfortunately, that drugs are unfortunately an aspect, an irrelated (sic) fact of this offense.

Mr. McLean: I would agree that there was a syringe at the scene but I never accused Ms. Prosper of using heroin or any kind of reference to that.

The Court: The Court is going to instruct the jury.

The Court then instructed the jury as follows:

Members of the jury you are going to receive some strong admonitions from the Court concerning certain testimony. This will be the strongest so far. Please listen very, very carefully.

The last question proposed by the prosecutor, you are to forget that for any purpose whatsoever. At no time do I want you to consider it in your own individual consideration or in your collective deliberation. I don't want it to ever be brought up back there in the jury

room for any purpose. Again, I cannot make it any stronger than that. It is that important. You put that last question of the prosecutor completely out of your mind, completely out of your consideration and certainly out of your deliberation from what is going on. It is that important, please.

The court then denied the motions for mistrial by both defendants.

The State, on appeal, does not argue that the extraneous offense was admissible; indeed, the trial court correctly and summarily rejected the prosecutor's argument for admissibility without even asking for a defense response. Instead, the State argues that the extraneous offense was harmless in light of the overwhelming evidence of guilt, and that the error was cured by the court's strong instruction to disregard. Neither argument persuades us.

The State's case depended entirely on the testimony of one eyewitness, Debbie Prosper, a convicted forger who was still on probation. Although claiming to have been a close friend of the deceased, Prosper conceded that she voluntarily left the scene with his killers and spent the night with them. She never reported the crime, never tried to help the deceased, and never called an ambulance. Her testimony was impeached in certain respects by a prior inconsistent statement made soon after the killing. She was the only eyewitness who denied Terrence Tate's claims of self-defense and defense of a third person, both of which were included within the court's charge to the jury.

The argument that the extraneous offense was harmless is doubtful when its probable impact is considered in light of other State's evidence. For example, before injecting the extraneous heroin offense, the prosecutor called the deceased's mother to testify on direct examination, and again on redirect examination, that her son's personal effects were not returned to her. She testified that although her son had usually worn a gold watch and a gold neck chain and possessed $70 cash on the day he died, none of that property was returned to her. The apparent purpose of these questions was to imply that the Tates had taken this property. Indeed, on cross-examination of Terrence, the prosecutor asserted that Terrence was trying to steal the victim's wallet and jewelry. The prosecutor offered this evidence even though Debbie Prosper later testified, on cross-examination, that she was "positive" that neither of the Tates took money or jewelry from the deceased. An obvious inference from the mother's testimony and the cross-examination of Terrence about the missing valuables, when combined with the prosecutor's assertion of the extraneous heroin purchase, was that the deceased was murdered in order to acquire his property and trade it for heroin. This would supply a motive that would support the vulnerable testimony of the State's sole eyewitness; that would explain an apparently unprovoked attack; and that would directly contradict Terrence Tate's testimony regarding defense of a third person and self-defense.

The State cites *Gutierrez v. State*, 628 S.W.2d 57 (Tex.Crim.App.1980), *overruled on other grounds, Chambers v. State*, 711 S.W.2d 240, 247 (Tex.Crim.App.1986), as its sole authority indicating that the extraneous offense was harmless. That case is distinguishable because: 1) no adequate objection was made; 2) no motion in limine was violated; 3) defense counsel asked the question that led to the offensive statement; 4) the witness apologized for the remark and attempted to explain it; 5) it was acknowledged that the witness was not referring to the defendant; 6) the prosecutor twice stated in closing argument that the defendant was not a heroin user; 7) the State's case was not significantly aided by the statement; and 8) the evidence of guilt was stronger, coming mainly from police officers, not from a forger still on probation. 628 S.W.2d at 62. *Gutierrez*, therefore, does not indicate that the error was harmless in the present case.

The State next argues that the court's instruction to disregard cured the error. Its sole authority for this proposition is *Maddox v. State*, 591 S.W.2d 898 (Tex. Crim.App.1979), *cert. denied*, 447 U.S. 909, 100 S.Ct. 2994, 64 L.Ed.2d 859 (1980).

*Maddox* is distinguishable because it did not involve an extraneous offense. 591 S.W.2d at 903. We nevertheless recognize that instructions to disregard have often been held sufficient to cure the error of admitting an extraneous offense. Not every such error, however, is curable by instruction.

The prosecutor in this case did more than fail to observe the rules of evidence. He violated the trial court's orders. There was a joint pre-trial hearing in this case at which both defendants presented motions. The trial court granted Terrence Tate's motion to suppress evidence of extraneous offenses. The following transpired:

> Mr. Secrest (Terrence Tate's attorney): Your honor, I also filed a motion to suppress evidence of extraneous offenses and Mr. Kelly (the prosecutor appearing at the hearing) indicated that he knows of no extraneous offenses except, of course, the enhancement paragraph.
>
> The Court: Is that all?
>
> Mr. Kelly (the prosecutor): That's correct, Your Honor.
>
> The Court: That will be granted. If there are any at that time you will have a separate hearing.
>
> Mr. Secrest: Thank you, Your Honor. And I also have my motion that if any extraneous offenses come to light further on down the line after research and preparation of this cause by Mr. Kelly that they be tendered pursuant to the Rules of Criminal Procedure, Section 404b. That information would come before trial so that I can utilize effectively. Secondly that no mention be made of any alleged extraneous offenses in the presence of the jury before you have had a chance to rule upon the admissibility of them.
>
> The Court: The new rules are clear. If you plan [on] using anything, the moment you may be using them, notify the Court and the defense attorney.
>
> Mr. Kelly: Yes, sir, I will.

The court signed an order on the same date suppressing evidence of extraneous offenses.

When the prosecutor at trial, who was not Mr. Kelly, accused appellant and Terrence Tate of purchasing heroin, he violated the court's order in a way that prejudiced both defendants. Although the trial prosecutor, Mr. Munier, was apparently not present at the motions hearing, that does not excuse the violation of the court's order. A lawyer has the duty to know the status of his case and the contents of the court's file. This duty is not excused by the fact that different lawyers represented the State at the motion hearing and at the trial. *See Herring v. State,* 752 S.W.2d 169, 172 (Tex.App.—Houston [1st Dist.] 1988, pet. pending).

This is the second recent occasion in which the same prosecutor's lack of information concerning his own case has resulted in reversible error. In *Dopico v. State,* 752 S.W.2d 212 (Tex.App.—Houston [1st Dist.] 1988, pet. pending), the prosecutor incorrectly informed the court and defense counsel, one day prior to trial, that there were no confidential informants used in a large cocaine delivery case. When the State's police witnesses testified to the contrary at trial, the prosecutor claimed total ignorance. We observed that, "[n]either the court nor appellant should have suspected that the prosecutor lacked such basic information on such a significant case so shortly before trial." *Id.* at 215. We further observed that the prosecutor should have been alerted to the possibility of an informant by the defendant's pre-trial motions. Likewise, in the present case, the trial court's orders suppressing extraneous offenses should have been enough to cure any degree of misunderstanding of the rules of evidence. We cannot ignore or condone repeated errors of such magnitude and similarity. However, we need not decide whether the prosecutor acted in bad faith. Our job is to decide whether the defendant was denied a fair trial.

When prosecutors have violated court orders and injected inadmissible evidence before the jury, reversals have followed despite strong instructions to disregard. In *Lucas v. State,* 378 S.W.2d 340 (Tex.Crim. App.1964), the prosecutor injected extraneous offenses before the jury in violation of

a motion in limine. The trial instructed the jury as follows:

> The jury is instructed to disregard that entirely. That's improper. I ought to hold [the prosecutor] in contempt, but I'm not going to at this time. You know better than that; don't do it again.

378 S.W.2d at 342.

The improper question in *Lucas*, as here, asserted the commission of an extraneous narcotics offense. The Court of Criminal Appeals held:

> The question propounded, referring to an extraneous offense, was clearly improper and prejudicial to the appellant, and we are unable to say that its harmful effect upon the jury was removed by the court's instruction. Under the record, the court should have granted a mistrial.

*Id.*

Similarly, in *Govan v. State*, 671 S.W.2d 660 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd), the prosecutor presented evidence of extraneous offenses immediately after assuring the court that he would not do so. The trial judge instructed that, "[t]he jury is not to consider it for any purpose. Totally disregard." This Court stated:

> We consider this testimony especially objectionable because the prosecutor assured the court prior to the colloquy that he would not "bring in" extraneous offenses.

671 S.W.2d at 663. Noting that the State's evidence was not overwhelming, we reversed.

In this case, the trial judge did all he could to avoid this error. He granted the motion in limine. He sustained the objection. He gave a strong instruction to disregard. Unfortunately, this was not enough to avoid, or in our opinion, to cure the effect of the prosecutor's performance. Based on this record, we are not convinced beyond a reasonable doubt that the prosecutor's error made no contribution to the conviction. Tex.R.App.P. 81(b)(2).

Point of error four is sustained.

The judgment is reversed, and the cause is remanded to the district court.

STEPHANOW, J., dissents.

STEPHANOW, Justice, dissenting.

I would overrule appellant's fourth point of error and affirm the judgment of the trial court.

Appellant argues that the following exchange constituted an erroneous admission of evidence of an extraneous offense:

> [PROSECUTOR]: What time did you go to bed that evening?
>
> [APPELLANT]: Of the offense?
>
> [PROSECUTOR]: Yeah.
>
> [APPELLANT]: I don't know, 11:00 or 12:00 o'clock.
>
> [PROSECUTOR]: Have you left anything out, Mr. Tate, as to when you went after you left your grand parent's house and the grocery store?
>
> [APPELLANT]: No, sir.
>
> [PROSECUTOR]: Didn't your father and you go on a lone mission to score happiness.
>
> [APPELLANT]: No, sir.
>
> [PROSECUTOR]: Isn't it a fact that you went and scored some heroin with your father after this offense?
>
> [MR. SECREST]: (Defense Counsel) Your Honor, I object to that. May we approach the bench?

Error in asking an improper question may generally be cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same, except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced upon their minds. *Davis v. State*, 645 S.W.2d 817, 818 (Tex.Crim.App.1983); *Thompson v. State*, 612 S.W.2d 925, 928 (Tex.Crim. App.1981).

Specifically, testimony referring to or implying an extraneous offense allegedly committed by a defendant may be rendered harmless by an instruction to disregard in all but the most extreme situations. *Aliff v. State*, 627 S.W.2d 166, 172 (Tex.Crim.

App.1982); *Campos v. State,* 589 S.W.2d 424, 428 (Tex.Crim.App.1979); *Gilmore v. State,* 666 S.W.2d 136, 150 (Tex.App.— Amarillo 1983, pet. ref'd). In determining whether a jury instruction is sufficient to cure the error, the facts of each particular case must be noted. *Gonzales v. State,* 685 S.W.2d 47, 49 (Tex.Crim.App.1985).

In the instant case, the prosecution's improper question was never answered, and the trial court promptly sustained appellant's objection and instructed the jury, in the strongest terms, to disregard the evidence and not to consider it for any purpose. No further evidence concerning the extraneous offense was elicited.

I cannot conclude that, given the circumstances, the question was of such character that the court's instruction could not withdraw any adverse impression made upon the jury. I would overrule appellant's fourth point of error and sustain the conviction.