NO. 07-01-0403-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 25, 2002



______________________________




FRANK CHRIS MENDEZ, JR., APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;



NO. 2407; HONORABLE GORDON H. GREEN, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 In this proceeding, appellant Frank Chris Mendez, Jr. appeals his conviction for the
offense of murder and the jury-assessed punishment, enhanced by two prior convictions,
of 40 years confinement in the Institutional Division of the Department of Criminal Justice
and a fine of $10,000. Finding no reversible error, we affirm the judgment of the trial court
for the reasons set forth.

 In five issues, appellant complains (1) the trial court erred in admitting into evidence
the telephone conversations between witness Johnny Sanchez and the deceased, Sandra
Jenkins, in the hours preceding her death, (2) the trial court erred in admitting into
evidence testimony concerning electronic monitoring of appellant at the time of the
offense, (3) the trial court erred in overruling his motion for a mistrial when testimony was
presented to the jury as to an extraneous offense, (4) the evidence is legally insufficient
to support the verdict, and (5) the evidence is factually insufficient to support the verdict. 


 On December 31, 2000, appellant and his live-in girlfriend, Sandra Jenkins
(Sandra), who was also the mother of his infant daughter, held a New Year's Eve party at
their apartment. Most of the guests left around 12:30 p.m. There was testimony that at
the party, Sandra was drinking beer and also smoked marijuana with several of the guests. 
However, there were no signs of an argument between Sandra and appellant. Sometime
later, a neighbor observed appellant and Sandra standing outside the apartment and soon
after that, he could hear both Sandra and the baby crying inside the apartment. Shortly
thereafter, appellant appeared at the neighbor's door and handed them his infant
daughter, who was covered in blood but was apparently unhurt. Appellant told them to
take care of the child. One of the occupants then called 911. 

 A guest at the party, Johnny Sanchez, received several phone calls from Sandra
beginning at 1:20 a.m., in which she asked him to either come get appellant or her and the
baby because appellant was going to kill her. In the second call, she stated that appellant
had pulled a knife on her. Sanchez also talked to appellant during the second call, and
appellant said Sandra was upset because of a phone call he made to his mother, but that
they were all right. Sanchez received at least one other call from Sandra after that
conversation as shown by Caller ID, but he did not answer it.

 Officer Brandon Neal of the Friona Police Department was dispatched to the scene
at 2:11 a.m. Upon his arrival, he observed appellant outside the apartment. Appellant told
him that Sandra needed help. When Neal entered the apartment, he saw Sandra slumped
on the sofa with blood stains on her face. He also observed a puncture wound on the right
side of her abdomen. Sandra was unresponsive. Appellant told him they had an argument
and that Sandra had thrown the phone. There were also several overturned chairs and
broken plates. Appellant admitted he had hit Sandra. EMS personnel arrived and
transported Sandra for treatment. She later died from massive internal bleeding and shock
due to arterial and venous injury from an abdominal stab wound. 

 In his first issue, appellant complains of the admission of the content of the
telephone calls Sandra made to Sanchez as being hearsay. The court initially sustained
the objection, but the State argued in a hearing outside the presence of the jury that the
testimony was not offered to prove the truth of the matter asserted but as a res gestae
statement and to show the victim's state of mind because the defense was raising suicide
as an explanation of Sandra's abdominal injury. The court found that the statements fit
within an exception to the hearsay rule. 

 Hearsay is a statement other than one made by the declarant while testifying at trial
offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is not
admissible except as prescribed by the rules. Id. 802. An exception to the hearsay rule
is a statement of the declarant's then existing state of mind, emotion, sensation or physical
condition, but does not include a statement of memory or belief to prove the fact
remembered or believed unless it relates to the execution, revocation, identification or
terms of declarant's will. Id. 803(3). Other exceptions are statements describing or
explaining an event or condition made while the declarant is perceiving the event or
condition or immediately thereafter and statements relating to a startling event or condition
made while the declarant is under the stress of excitement caused by the event or
condition. Id. 803(1) and (2). 

 The testimony elicited at the hearing on appellant's objection was as follows:

 Q. (BY MR. ACTKINSON) You received a phone call from Sandra?

 A. Yes.


 Q. And you recognized her voice?


 A. Yes.


 Q. And you think this phone call you got about 1:20?


 A. Somewhere around there, yes.


 Q. And what did she say to you?


 A. She was - - she told me to come get Franky out of there, said he's going
to kill me, come get Franky or come get me and my daughter out of here.


 Q. And what did you do based upon what she told you?


 A. I just told her, you know - - what did I do?


 Q. Yes.


 A. I just talked to her, I told her that he wasn't going to kill her, you know. 
I said, what's going on. And she was just hysterical.


 Q. She was in fact hysterical?


 A. Yes.


 Q. And she asked you to come take her out of the house or take Franky out
of the house? 


 A. Yes.


 Q. Or come take her and the baby out of the house because she thought
Franky was going to kill her?


 A. Yes.


 Q. Did you in fact talk to Franky?


 A. On the second phone call I did.


 Q. So on the first phone call you did not?


 A. No.


 Q. Was there a second phone call?


 A. Yes.


 Q. And who was that?


 A. It was Sandra.


 Q. And how much later did you receive the second phone call?


 A. Not much later, I'm going to say at least ten minutes.


 Q. So about 1:30 she's calling back to your house again?


 A. Yes.


 Q. And what did she say the second time?

 A. She was yelling more, she says - - she wanted me to get Franky out of
there. She said, I know he's going to kill me, he's got a knife. And I asked
her, where's Franky at. She said, he's right here. Let me talk to Franky, so
I talked to him and asked him what was going on, and he just told me that
she was mad because she was talking - - he was talking to his mom in
Spanish over the phone. 


 Q. And this is the conversation that you had with Franky?


 A. Yes.


 Q. He was explaining to you why Sandra was mad?


 A. Yes. 


 Q. And did you ask him about having the knife?


 A. No, I didn't, I didn't ask him. All I asked him, are you guys okay. He
says, we're all right. I said, are you sure. And he said, yeah.


 Q. Did you talk to Sandra again on that phone conversation.


 A. I talked to Sandra again.


 Q. And what did you tell her?


 A. I told her everything is going to be all right. He's not going to kill you. 
She kept saying, he's going to kill me tonight, Johnny, come and get me.


 Q. And then that phone conversation ended?


 A. Yes.


 Q. And then did she call you a third time?


 A. The phone was ringing and I saw - - I looked at the Caller ID and it was
his phone number, and I didn't answer it. 


 Q. And where was that phone call, how much later after the second phone
call?


 A. Not too late after the second one.


 Q. Five or ten minutes?


 A. Something like that.


 Q. But you didn't answer that phone?


 A. No, I didn't.


 Q. Had you done this before, had you acted as a mediator between them
before?


 A. No, not between them.


 Q. Had Sandra ever called you before because Frank had hit her or asked
you to come help her?


 A. No.


 Q. Why did you not go over there?


 A. I thought they were just having a family argument, you know.


 Q. You had seen them less than an hour earlier and they were not having
any disagreement?


 A. They weren't arguing, they were happy, so that's why I thought maybe
something happened that they were just having a little argument.


 Q. And without question, you recognized the voice of Sandra and you
recognized the voice of Frank and you knew who you were talking to?


 A. Yes. 


Appellant argues that the statements by Sandra that he was going to kill her and he had
pulled a knife on her did not describe her state of mind, but represented only a belief held
by Sandra and were offered to prove the truth of the matter asserted. 

 We review the trial court's ruling on the admissibility of hearsay under an abuse of
discretion standard. Lawton v. State, 913 S.W.2d 542, 553 (Tex.Crim.App. 1995), cert.
denied, 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). Appellant relies on Anderson
v. State, 15 S.W.3d 177 (Tex.App.--Texarkana 2000, no pet.), for the proposition that a
victim's state of mind prior to any fatal incident is generally neither at issue nor probative
of any material issue in a murder prosecution. Id. at 184. However, that court noted there
was an exception for defense claims of accident, self-defense, or suicide. Id. In the case
at bar, appellant presented evidence that Sandra had been depressed and wanted to join
a cousin who had been killed in a car accident in an attempt to demonstrate that her death
was a suicide. Therefore, evidence showing that she was afraid of appellant in the hour
preceding her death would have relevance as to whether her death was the result of a
suicide or other external means. 

 Even if the evidence is relevant, appellant relies on Dorsey v. State, 24 S.W.3d 921
(Tex.App.--Beaumont 2000, no pet.) and the previous ruling of this court in Barnum v.
State, 7 S.W.3d 782 (Tex.App.--Amarillo 1999, pet. ref'd), for the proposition that
statements from the victim that the defendant might kill her reflect a belief which would not
be admissible under the state of mind exception to the hearsay rule. In Dorsey, the victim
made several statements to co-workers and friends prior to the incident that she was afraid
to divorce the defendant, the defendant held her down on the bed with a knife to her throat,
he held a gun to her head up under her throat and in her mouth, that if anything ever
happened to her it meant that the defendant had killed her, and that the defendant followed
her to work every day to make certain she was there. The court found that her statement
describing her fear of the defendant was admissible to show her emotional state at the
time she made the statement, but the statement to the effect that if anything happened to
her appellant had killed her was only a belief. Dorsey, 24 S.W.3d at 928. The other
statements that the defendant held a knife to her throat, a gun to her head and throat and
followed her to work everyday were simply a recounting of her memory of events. Id. at
928-29.

 In Barnum, the victim had written a statement which read: "[t]oday I found the
attached paper. The paper with figures was written by my husband Barak Lee Barnum. 
I believe he may be contemplating murdering me for my $100,000.00 life insurance policy." 
We found the first two statements to be simply statements of events which have occurred. 
Barnum, 7 S.W.3d at 791. The last sentence was a statement of the victim's belief and
demonstrated her fear only by inference from that belief. Id. 

 In contrast, in this instance, Sandra was not describing a past incidence from
memory or her opinion as to what might happen at some unspecified time in the future. 
She was describing an ongoing occurrence that was happening at that moment. Her
statements that she either wanted Sanchez to come get appellant or her and the baby
because he was going to kill her did not just reflect her belief that appellant might kill her
someday in the future, but a present fear that he might do so imminently, thus
demonstrating her fear at that moment caused by events that were occurring at the time
of the statement. 

 Similarly, in Williams v. State, 798 S.W.2d 368 (Tex.App.--Beaumont 1990, no pet.),
the victim, who had just been sexually assaulted and was crying, spoke to a deputy and
told him that her assailant was going to come back and kill her and her children. The
testimony was held admissible to prove her then existing state of mind. Id. at 371.

 Even if the testimony was not admissible as evidence of her state of mind, we
believe it would have been admissible under the excited utterance exception to the
hearsay rule. In order for the excited utterance exception to apply, the statement must be
the product of a startling event, the declarant must be dominated by the emotion,
excitement, fear, or pain of the event, and the statement related to the circumstance of the
startling event. The pertinent inquiry is whether the cumulative effect of the three
requisites combined is sufficient to show the reliability of the statement. Sellers v. State,
588 S.W.2d 915, 918 (Tex.Crim.App. 1979). 

 In this situation, appellant and Sandra had been observed by others during the
evening preceding the incident and seemed happy. However, at some point after the
guests left the party, that situation changed and appellant picked up a knife which caused
fear in Sandra. As a result, Sanchez described Sandra as hysterical. She pleaded with
Sanchez to either come and get appellant or take her and the baby away from the
apartment because she believed appellant would kill her. It is clear that Sandra was
dominated by the emotion arising from their argument and from appellant having a knife. 


 Appellant further argues that the probative value of Sandra's statements is
outweighed by the danger of unfair prejudice under Rule of Evidence 403. Appellant's
objection at trial was that the testimony was hearsay, not that the prejudicial effect
outweighed the probative value. Therefore, the issue has not been preserved. Williams
v. State, 995 S.W.2d 754, 760 (Tex.App.--San Antonio 1999, no pet.). The trial court did
not abuse its discretion in allowing the admission of the testimony. Appellant's first issue
is overruled. 

 In his second issue, appellant complains of the court's admission into evidence of
the testimony of Chris Salinas, appellant's parole officer, that appellant wore an electronic
monitor at the time of the alleged offense. Appellant objected to the testimony at trial on
the basis that the probative value was limited because no doubt had been cast on the fact
he was present at the crime scene, and the prejudicial value was high because it indicated
to the jury that appellant was on parole for another crime. The specific authority appellant
cited at a hearing outside the presence of the jury was Rules 404B, 403, 608, and 609F
of the Rules of Evidence. (1) The State noted that appellant was on parole for burglary,
which was charged in the enhancement paragraph of the indictment and, because the
case was based on circumstantial evidence, the State should be permitted to prove that
appellant was present at the time of Sandra's injury. 

 The court ruled that the evidence was probative under Rule 404B. The State further
agreed to limit any testimony as to the witness's employment as a parole officer and to
show that he was merely the custodian of the records. In Salinas's testimony at trial, there
was no mention of what job Salinas held or that appellant was on parole for another crime.
The witness simply stated he brought some electronic monitoring records pertaining to
appellant, he had reviewed the records, and that according to the records, appellant had
been within 150 feet of his apartment between 10:10 a.m. on December 31, 2000, and 2:58
a.m. on January 1, 2001. 

 On appeal, appellant argues the evidence is cumulative because a neighbor,
Lorenzo Sierra, Jr., testified that he observed appellant standing in the doorway of the
apartment within minutes of when Sandra was stabbed. Further, he argues, evidence of
other crimes is not admissible to prove the character of a person. Finally, he cites Cooper
v. State, 901 S.W.2d 757 (Tex.App.--Beaumont 1995, pet. dism'd), for the proposition that
the State is not entitled to "set the stage" for a witness to testify to facts not otherwise at
issue, because the State asserts the witness will rebut a defensive theory. 

 Rule 404(b) of the Rules of Evidence provides that evidence of other crimes,
wrongs or acts is not admissible to prove the character of a person in order to show he
acted in conformity with that character. Tex. R. Evid. 404(b). However, in this instance,
there was neither direct mention of any crime nor of the fact appellant was on parole. 
Thus, although the jury may have wondered about the use of electronic monitoring, there
was no direct evidence that appellant had been convicted of a crime or what that crime
may have been. The only evidence before the jury was of electronic monitoring to prove
appellant's presence at the scene during the period of time when the crime took place. 

 Although appellant argues that the State may not "set the stage" with evidence of
appellant's presence until he has testified he was not present at the time of the incident,
the State has the burden of proving beyond a reasonable doubt that appellant intentionally
and knowingly caused Sandra's death by stabbing her with a knife, which necessarily
requires the State to prove his presence at the crime scene. In contrast, the Cooper case
on which appellant relies involved evidence of anal intercourse with the defendant's
girlfriend to show a pattern of behavior that he also allegedly had anal intercourse with her
two children. The court found that, in addition to the fact the evidence was not relevant
as to identity or intent, the children had not yet been questioned at that point in time and
therefore, any impeachment of their testimony was not yet a problem for the State to
address with the mother's testimony. Cooper, 901 S.W.2d at 762. 

 In this case, there was testimony from a neighbor that he had seen appellant
outside the apartment immediately preceding the stabbing. Indeed, he testified it was
about 20 minutes prior to the time appellant brought the baby to his apartment. It would
have been possible for appellant to leave the apartment in that 20 minutes, and therefore
the evidence is not necessarily cumulative. 

 Rule 403 provides that evidence, although relevant, may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, misleading the jury, by considerations of undue delay, or needless presentation
of cumulative evidence. Id. 403. We have already determined that the evidence had
probative value. Further, precautions were taken so that any prejudicial effect of the
testimony was minimal. Thus, it cannot be said that the prejudicial value substantially
outweighed the probative value or that the trial court abused its discretion in permitting the
admission of the evidence. Appellant's second issue is overruled. 

 Appellant complains in his third issue that the trial court should have granted a
mistrial when testimony was presented by Sandra's mother concerning an extraneous
offense he committed. The objectionable testimony is as follows:

 Q. Now, prior to her death, where did your daughter live, where was her
residence?


 A. When she died?


 Q. Yes, ma'am.


 A. In Friona.


 Q. And did she live at those apartments?


 A. Yes, sir.


 Q. And who was she living with?


 A. With Franky, he had just moved back in after he got out of the pen. 

 

At that point, appellant moved for a mistrial because the jury had been informed that he
had been in prison. The court denied the motion for mistrial, but offered to give an
instruction to disregard. Before the instruction was given, appellant also objected on the
basis of Rules 403 and 404 of the Rules of Evidence. The court sustained the objection
as to relevancy and instructed the jury not to consider the witness's last answer as
evidence for any purpose. 

 Appellant concedes that error in the admission of improper testimony will usually
be cured by an instruction to disregard; however, he argues that, in this instance, the
instruction was insufficient to cure the harm created by the testimony. This is so, he
posits, because the witness had been warned not to make any such remark and it was
therefore calculated to inflame the minds of the jury. He also notes the weak factual basis
of the case in asserting that no limiting instruction could cure the impression left on the
jury.

 Appellant cites Tate v. State, 762 S.W.2d 678 (Tex.App.--Houston [1st Dist.] 1988,
pet. ref'd) and Govan v. State, 671 S.W.2d 660 (Tex.App.--Houston [1st Dist.] 1984, pet.
ref'd), as authority for his argument that these cases involved instances in which the
prosecutor violated a court order in making reference to an extraneous offense or brought
a witness to the stand for the sole purpose of extracting testimony of an extraneous
offense after he had assured the court he would not do so. Tate, 762 S.W.2d at 681;
Govan, 671 S.W.2d at 663. In the case at bar, the State did not ask a question that would
ordinarily extract information as to an extraneous offense, it merely asked the witness who
Sandra lived with. Appellant notes that the remark followed the testimony about electronic
monitoring, but that neither that evidence nor the remark by Sandra's mother was
calculated by the State to inflame the jury. We believe the instruction to disregard would
have cured the error in the admission of the testimony. The third issue presented by
appellant is overruled.

 Appellant's fourth and fifth issues challenge the legal and factual sufficiency of the
evidence to support the conviction. Because appellant has briefed the issues together,
we will likewise discuss them together. The standards by which we review legal and
factual sufficiency challenges are now so well known that it is unnecessary for us to restate
them. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). We also must remember that
the jury is the sole judge of the credibility of the witnesses and the weight to be given their
testimony, and it may accept or reject any part of that testimony. Cain v. State, 958
S.W.2d 404, 407 n.4 (Tex.Crim.App. 1997). 

 Appellant was charged in the indictment with intentionally and knowingly causing 
Sandra's death by stabbing her with a knife. He alleges that there is a material variance
between the indictment and the proof at trial because the police could not identify any
specific knife as the murder weapon, one of the doctors testified he could not tell the
difference between a knife wound and a wound caused by another object, no knife was
entered into evidence at trial, and there was no fingerprint evidence to show that he
possessed any instrument which caused Sandra's injury. 

 In a prosecution based on circumstantial evidence, it is not required that every fact
point directly and independently to the guilt of the accused but the cumulative force of all
the incriminating circumstances may be sufficient. Barnes v. State, 876 S.W.2d 316, 321
(Tex.Crim.App.), cert. denied, 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994);
Vaughn v. State, 607 S.W.2d 914, 921 (Tex.Crim.App. 1980). In this instance, Sandra and
appellant both resided in the apartment where she was found by a police officer with a
puncture wound in her abdomen. Sandra was not breathing when emergency medical
personnel arrived and they worked on her for 26 minutes in an attempt to get her to begin
breathing before transporting her. She was transferred to the Parmer County Community
Hospital and later to Hereford where emergency surgery was performed. 

 Guests at the party that evening thought both Sandra and appellant seemed happy. 
However, within an hour prior to the 911 call, Sandra had made several phone calls to
Sanchez, expressing her imminent fear of appellant and saying he had a knife. Appellant
himself acknowledged to that same friend that he and Sandra were arguing. Electronic
monitoring showed that appellant had not been more than 150 feet away from the
apartment for a number of hours prior to the arrival of the police officer. That officer was
dispatched to the apartment after a neighbor called 911 after appellant left his daughter,
in blood-stained clothes, with the neighbor. Appellant admitted to the officer that he had
struck Sandra in the face. The apartment was also in disarray as though there had been
a scuffle. Several knives were found in the apartment in various locations, and later
Roberto Dominguez, a maintenance man at the apartment complex found a knife about 20
feet from the back door of appellant's apartment after seeing a trail of blood drops in the
snow. Law enforcement personnel observed blood stains on the back door, stair walls and
bannister, in a sink, and leading to a beer can outside the back door. Photographs taken
of appellant's hand showed cut marks on them. 

 Dr. Nadir Khuri performed surgery on Sandra in an attempt to save her life. He
testified that she had a stab wound in her belly that protruded into the iliac artery and vein. 
The wound was about six inches deep and slightly less than an inch wide. He testified that
she hemorrhaged to death internally as a result of that wound. According to Dr. Khuri, the
object used to make the wound was a flat, sharp object, although he agreed it could have
been a flat, sharp piece of glass if it was long and sturdy enough. 

 One of Sandra's friends, Sara Street, provided evidence that Sandra had mood
swings and had been depressed. Sara also testified that Sandra drank alcohol, used 
marijuana, cocaine, and Prozac. Sandra had recently been arrested for driving while
intoxicated, and there was testimony of conflict between Sandra and her mother, who had
allegedly threatened to take Sandra's child from her. Sara stated she was concerned that
Sandra might hurt herself. 

 In Reeves v. State, 969 S.W.2d 471 (Tex.App.--Waco 1998, pet. ref'd), cert. denied,
526 U.S. 1068, 119 S.Ct. 1462, 143 L.Ed.2d 547 (1999), the cause, time, and location of
death were not known. There was also no physical evidence of foul play to connect the
defendant to the murder. However, the defendant was the last one to see the victim alive,
he had previously abused her, he had the best opportunity and a motive to kill her, he told
conflicting stories about her whereabouts, he went camping the day after she disappeared
in the area where her body was found, and his actions immediately after her death, such
as washing his truck, disposing of his sleeper sofa, and replacing carpet indicated he was
hiding something. The evidence was held to be both legally and factually sufficient to
support the verdict. Id. at 479-80. 

 In this instance, the location, approximate time, and the injury leading to Sandra's
death are known. Although there is no fingerprint or DNA evidence connecting appellant
to the crime, there is evidence that appellant was threatening Sandra with a knife shortly
before her injury and she believed he was going to kill her. There is also evidence that
appellant was present in the apartment at the time of Sandra's injury, and he admitted he
struck her in the face. A number of knives were found inside the apartment and one was
found outside the back door. The jury was free to resolve any inconsistencies in the
evidence and conclude that appellant inflicted the lethal injury on Sandra with a knife as
opposed to it being a self-inflicted injury or an injury by some other object. We believe a
rational jury could have found the essential elements beyond a reasonable doubt, and that
such a finding is not clearly wrong or unjust. Appellant's fourth and fifth issues are
overruled. 

 Finding no reversible error, we affirm the judgment of the trial court. 


 John T. Boyd

 Chief Justice


Do not publish. 

NO. 07-01-0403-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 25, 2002



______________________________




FRANK CHRIS MENDEZ, JR., APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;



NO. 2407; HONORABLE GORDON H. GREEN, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

CONCURRING OPINION


 I concur in the result. 

 Phil Johnson

 Justice



Do not publish. 

 

 
1. Appellant also challenged the authentication of the records, but has not raised that
issue on appeal.