Opinion filed November 16, 2006


















 
 
  
 
 







 
 
  
 
 




Opinion filed November 16, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00283-CR 

                                                     __________

 

                               CLARENCE
DON HUNTER, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 104th District Court

 

                                                          Taylor County,
Texas

 

                                                 Trial
Court Cause No. 15,305-B

 



 

                                                                   O
P I N I O N

 








Clarence Don Hunter appeals his conviction by a
jury of the offense of possession of cocaine with intent to deliver in a
drug-free zone.  The jury assessed his
punishment at twenty-five years in the Texas Department of Criminal Justice,
Institutional Division.  He contends in
three issues that (1) the evidence was legally insufficient to support the jury=s finding that he possessed cocaine
with the intent to deliver; (2) the trial court improperly denied his motion
for mistrial following the improper introduction of extraneous offenses; and
(3) the trial court denied him effective assistance of counsel by allowing
impeachment evidence in violation of its earlier ruling granting his motion in
limine.  We affirm.

Hunter contends in his third issue that the
evidence is legally insufficient to support the jury=s
finding that he possessed cocaine with the intent to deliver.  In a legal sufficiency review, we view all of
the evidence in the light most favorable to the verdict and then determine
whether a rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307 (1979).  

Testimony by Sergeant Stan Standridge of the
Abilene Police Department showed that, during an investigation of a call by
Hunter concerning a police officer who had previously investigated a neighbor=s complaint against Hunter, he arrested
Hunter at Hunter=s
residence for driving while his license was suspended.  He testified that Hunter=s residence is located approximately
361 feet from the property line of a school and approximately 405 feet from the
school building.

Andrew Boettcher, a patrol officer for the Abilene
Police Department, testified that he transported Hunter to the Taylor County
Jail after Sergeant Standridge arrested him. 
He identified State=s
Exhibit No. 1 as the object he saw located in Hunter=s
buttocks during an unclothed search of Hunter.

Rodney Smith testified that he is an agent with
the Special Operations Division of the Abilene Police Department.  He indicated that, because of his work on the
streets in Abilene,
he was familiar with how controlled substances are packaged.  He stated that State=s
Exhibit No. 1 consisted of two pieces of clear plastic with numerous pieces of
crack cocaine and another piece of black plastic which also had numerous pieces
of crack cocaine.  He said that each
piece is designed to be sold or used individually as crack cocaine.  He also described each piece as a unit or hit
of crack cocaine.  He related that the
individual pieces would be sold for $20 each, while there were a couple of
pieces that would sell for $50 each.  He
insisted that this was consistent with how crack cocaine is traded and sold on
the street.  He estimated the street
value of the drugs at $600 to $1,000.

On cross-examination, Agent Smith acknowledged
that he did not know how much the substance in question had sold for.  He acknowledged that there was no published
price list and that price was Apretty
much whatever you got and how hard you got to sell it and how bad you want it.@ 








Agent Smith testified on redirect examination that
crack cocaine is normally purchased one or two rocks at a time.  He said that he had heard from the people he
talked to that a typical user would have anywhere from $20 to $200 per day
habits.  He stated that in his opinion
the amount of crack cocaine possessed by Hunter would be a lot more than a
typical user would have for personal use. 
He indicated that based on the amount of crack cocaine Hunter had in his
possession, it was his opinion that it was in his possession to be resold on
the street to other people.

Agent Smith testified on recross-examination that,
if Hunter wanted to, he could use the drugs himself.  He acknowledged that, if going to purchase an
item presented a little danger of getting arrested, one might not want to go to
the store quite so often.

William Chandley, a drug chemist with the Texas
Department of Public Safety Laboratory in Abilene,
testified that he examined State=s
Exhibit No. 1 and found that it weighed 6.06 grams and that it contained
cocaine.  Don Eiland, the director of
student services for the Abilene Independent School District, identified Valley
View Elementary School as a school that was operating as an elementary school
on the date of the offense.

Barbara Smith, Hunter=s
neighbor, testified that while drunk Hunter had said to her, AI bet you=re
curious why all of these cars are in our yard.@  She indicated he said, AI sell dope, but as long as you don=t call the police there will be no
problems.@  She related that he said, AIf you have a problem, you come to me.@ 
Barbara Smith stated that, during the time she and Hunter were
neighbors, there was a constant amount of traffic going in and out of his house
at all hours of the day.  She insisted
that she had seen him selling and had called the police multiple times.  

Caroline Brown testified that she heard Hunter
say, AI sell
crack.  It=s
obvious.  I=m
sure you all know it.  You can tell by
what=s going
on, the traffic and everything.@  She stated that he said that if there was a
problem to let him know instead of calling the police.  She also indicated that cars were coming to
Hunter=s house
at all hours, sometimes several cars at a time. 
She related that she would see people walk up and hand him something and
he would hand back something.  She
insisted that she and Barbara Smith had called the police to report all of the
traffic several times, ATen,
12, 15.@  According to Brown, Hunter had not been
drinking when he made the statement about being a drug dealer.








Hunter testified that he never saw any traffic
coming and going at his house.  He
insisted that he purchased the cocaine from a street dealer for his personal
use.  When asked how long it would take
him to Asmoke up@ six grams of cocaine, he stated that A[i]t could take from -- anywhere from
three days -- three to six days to smoke. 
Depends on the user.@  He indicated that the going price for crack
cocaine was $25 to $30 per gram.  He said
that he had to use more cocaine to stay high because his highs only lasted
about five minutes at the most.  

On cross-examination, Hunter acknowledged that the
house he was living in was within a block of Valley View
 Elementary School.  Hunter could not identify or give any
description of the dealer from whom he stated he bought the cocaine, except to
say that the dealer was black.  He
insisted that he got a better price than that noted by Agent Smith because
black dealers would give a better price to someone who is black.  He acknowledged that he had been convicted of
one felony and possibly two.

We hold that from this evidence a rational trier
of fact could have found the essential elements of the offense, including the
element that Hunter possessed the cocaine with intent to deliver, beyond a
reasonable doubt.  Consequently, the
evidence is legally sufficient to support Hunter=s
conviction.  In his analysis of the
evidence, Hunter ignores evidence that he admitted to his neighbors that he was
a drug dealer and evidence of heavy traffic and other activity at his home from
which a rational juror could have determined that Hunter sold drugs there on a
regular basis.  We overrule issue three.








Hunter urges in issue one that the trial court
erred in denying his motion for mistrial following the improper introduction of
extraneous offenses.  When Sergeant
Standridge was asked the nature of his contact with Hunter, he replied that
Hunter said, AI
remember you.  You=re
the one that sent me to the penitentiary.@  Hunter objected and asked for a
mistrial.  After the prosecutor asked
that the jury be instructed to disregard the remark, the trial court sustained
Hunter=s
objection and instructed the jury to disregard the remark and not consider it
for any purpose.  The trial court
overruled Hunter=s motion
for mistrial.  Later, Sergeant Standridge
testified that he had given instructions as to how to search Hunter at the
jail, noting that he had known Hunter before the occasion in question.  The trial court sustained Hunter=s objection to Sergeant Standridge=s testimony, instructed the jury to
disregard his answer, and instructed him to listen to and answer the questions.

The asking of an improper question will seldom
call for a mistrial because, in most cases, any harm can be cured by an
instruction to disregard.  Ladd v.
State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).  A mistrial is required only when the improper
question is clearly prejudicial to the defendant and is of such character as to
suggest the impossibility of withdrawing the impression produced on the minds
of the jurors.  Id.  A trial court=s
denial of a mistrial is reviewed under an abuse of discretion standard.  Id.  

We hold that, because the trial court=s instruction cured any error, the
trial court did not abuse its discretion in denying Hunter=s motion for mistrial.  Kemp v. State, 846 S.W.2d 289, 308
(Tex. Crim. App. 1992); Gardner
v. State, 730 S.W.2d 675, 697 (Tex. Crim. App. 1987).  Hunter relies on numerous cases, including Fentis
v. State, 528 S.W.2d 590, 592-93 (Tex. Crim. App. 1975); Tomlinson v.
State, 422 S.W.2d 474 (Tex. Crim. App. 1967); Lucas v. State, 378
S.W.2d 340, 342 (Tex. Crim. App. 1964); Robinette v. State, 816 S.W.2d
817 (Tex. App.CEastland
1991, no pet.); Tate v. State, 762 S.W.2d 678 (Tex. App.CHouston [1st Dist.] 1988, pet. ref=d); and Govan v. State, 671
S.W.2d 660, 662-63 (Tex. App.CHouston
[1st Dist.] 1984, pet. ref=d).  We have examined all of the cases cited by
Hunter and find that the testimony in Kemp and Gardner, which
made reference to the defendant having been in the penitentiary, is more
relevant to the issue than any of the cases cited by Hunter, none of which
involved references to the defendant having been in the penitentiary.  We overrule issue one.

Hunter insists in issue two that the trial court
denied him the effective assistance of counsel by allowing impeachment evidence
in violation of its earlier ruling granting his motion in limine.  Prior to trial, Hunter sought and obtained a
motion in limine that provided that, prior to specific mention of prior
convictions or alleged violations of the law other than a particular
terroristic threat, a hearing should be held outside the presence of the jury
to ascertain its admissibility.  The
court=s ruling
on the motion was preceded by the following discussion between Britt Lindsey,
Hunter=s
counsel, and Joel Wilks, attorney for the State:








MR. LINDSEY:  Judge, the
motion the district attorney alluded to was a motion in limine against
impeachment with any prior -- of any prior conviction prior to going in front
of the Court and getting the Court=s
ruling on any prior convictions they may use. 
I understand from the district attorney=s
office that they are not going to use any prior convictions at the time --
testimony of guilt-sentence (sic).

 

Is that correct, Joel?

 

MR. WILKS:  Yes, sir.  I mean, obviously I reserve my rights as far
as if the defendant were to testify and as far as, you know, impeachment-type
evidence, things like that, but in our case in chief I don=t intend to go into any of that.  There were other things about some extraneous
offenses and some bad acts.  The only one
that I intend to go into as far as our case in chief is terroristic threat type
offense which is -- the Court heard some of that evidence during your motion to
suppress, and I think that it goes to the underlying search, I think it=s -- although not part and parcel of
the same offense it -- and it goes into the underlying search, and since the
legality of the search has previously been contested and I expect it to be
contested again then I think if they put that in issue and then that=s the only reason I=d go into that.  That=s
the only type of extraneous offense I intend to go into during my case in
chief.  

 

THE COURT: Anything, Mr. Lindsey?

 

MR. LINDSEY:  No.  

 

When the State sought to impeach Hunter after he
had taken the stand, Hunter objected, stating that he had filed the motion in
limine to allow Hunter to testify free of any impeachment during his
case-in-chief and that it was granted. 
After counsel for the State referred back to the above discussion, the
trial court, noting its memory of that discussion, stated that the granting of
the motion went only to the State=s
case-in-chief.  The court stated it
understood that, if the defendant testified, counsel for the State might
attempt to impeach him.








Hunter does not contend that the impeachment
evidence was inadmissible for any reason, only that the granting of the motion,
which he contends extended to all of the guilt/innocence phase of the trial,
prevented his counsel from advising him that he might be subject to proper
impeachment in the event he testified. 
We first note that, in light of the discussion preceding the trial court=s granting of the motion, it was not
unreasonable for the trial court to construe that its granting of the motion
was limited to the State=s
case-in-chief and did not apply to impeachment evidence presented during Hunter=s case-in-chief.  Furthermore, even if we construe the motion
to apply to the entire guilt/innocence phase of the trial, the motion itself,
especially when considered with the discussion between counsel at the time it
was presented, shows the likelihood that the State would seek to impeach Hunter
and that such impeachment would be allowed with respect to admissible
impeachment evidence.  The discussion
also showed that Hunter=s
counsel recognized that the motion, if granted, would not preclude the State
from presenting impeachment evidence. 
Consequently, the granting of the motion did not preclude counsel from
advising Hunter that it was likely that he would be impeached with any
admissible impeachment evidence were he to take the stand and from advising him
of the consequences of such impeachment. 
We overrule issue two.  

The judgment is affirmed.

 

PER CURIAM

 

November 16, 2006

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

Strange,
J., and Hill, J.[1]











[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.